739 P.2d 339

Robert L. BURNSIDE, SSA 518 60 2456, Claimant-Appellant,

v.

GATE CITY STEEL CORPORATION, Employer-Respondent,

and

State of Idaho Department of Employment, Respondent.

No. 16300.

Supreme Court of Idaho.

May 28, 1987.

Marvin R. Stucki, Idaho Falls, for claimant-appellant.

Jim Jones, Atty. Gen., Roger T. Martindale, Deputy Atty. Gen., Boise, for Dept. of Employment.

BAKES, Justice.

Robert Burnside appeals from an Industrial Commission decision finding him ineligible to receive unemployment benefits from October 14, 1984, through January 5, 1985; January 13, 1985, through February 3, 1985; and February 10, through March 16, 1985. Burnside also appeals the commission's decision finding that the requirement to repay benefits already received should not be waived. Finding no error of law in the commission's proceedings, and finding their decision supported by substantial competent evidence, we affirm.

Burnside, an employee for 13 years with Gate City Steel Corporation, was indefinitely suspended from his employment on September 20, 1984, because of felony criminal charges filed against him. Burnside filed a claim for unemployment compensation on October 16, 1984, with the Department of Employment. As a part of the claim process he was also required to execute an "eligibility review agreement." Under that agreement Burnside was required to make at least 3–4 new job contacts a week, a majority of the contacts to be in person; to keep a detailed list of the contacts; and to contact 5 specifically named employers.

Burnside began receiving unemployment benefits beginning on October 14, 1984, and continuing through January 5, 1985. He did not claim benefits for the week of January 6 through January 12, 1985. Benefits were again paid from January 13 through February 2, and then from February 10 through March 16, 1985. As a part of the weekly claim process, Burnside filed weekly certification cards with the Department of Employment in which he certified that he was eligible for unemployment benefits during the week represented on the certification card.

On March 20, claimant's eligibility for unemployment benefits was reviewed by the Department of Employment. Burnside was interviewed, and he was asked to submit the "detailed list of contacts" required by the eligibility review agreement in order to document his efforts to find employment since filing for unemployment benefits. Burnside did not have the required records.

On March 22, 1985, the department issued an eligibility determination holding that Burnside had not been eligible for benefits during several of the weeks for which he had received benefits. Primarily, the department made the finding that Burnside had failed to abide by the work search requirements of I.C. § 72–1366(d) and had failed to submit an adequate detailed list of contacts required by the eligibility review agreement. As a result, the department determined that Burnside had received an overpayment of benefits in the amount of $3,287.

Burnside protested the department's determination of overpayment. Following a redetermination proceeding on April 5, 1985, the department affirmed the earlier determination of ineligibility and overpayment. Burnside appealed that determination to the appeals bureau of the department, and a telephone hearing was held on May 30, 1985. Burnside was represented by an attorney at that hearing. On June 18, 1985, the appeals examiner entered an order upholding the previous redetermination of ineligibility and overpayment of benefits.

Burnside then appealed to the Industrial Commission which held a hearing in Idaho Falls on September 20, 1985. Burnside, who was again represented by counsel, presented additional evidence at that hearing, including his own testimony as well as

documentary evidence in support of his claim that he had complied with the work search requirements of I.C. § 72–1366(d). The Industrial Commission issued its decision on November 18, 1985, finding that Burnside was indeed ineligible for unemployment benefits during the period for which he received payment of benefits and that he was required to repay the sum of $3,287, and that repayment could not be waived.

Burnside raises two issues on appeal: (1) whether the Industrial Commission erred in its finding that claimant had not complied with statutory work search requirements; and (2) whether the Industrial Commission erred in holding that claimant was not entitled to a waiver of overpayment.

## I

■ Idaho Code Section 72–1366 sets forth the conditions which a claimant must meet to be eligible to receive unemployment benefits:

"**72–1366. Personal eligibility conditions.**—The personal eligibility conditions of a benefit claimant are that—

"(a) In accordance with the provisions of this act, and such rules consistent therewith, as the director may prescribe—

"(1) He shall have made a claim for benefits and provided all necessary information pertinent to eligibility.

"(2) He shall have registered for work and thereafter reported at an employment office or other agency in a manner prescribed by the director.

. . . .

"(d) During the whole of any week with respect to which he claims benefits or credit to his waiting period he was able to work, available for suitable work and seeking work. . . ."

The claimant bears the burden of showing that he has satisfied all of the eligibility requirements, *Guillard v. Dept. of Employment*, 100 Idaho 647, 603 P.2d 981 (1979), and, as we stated in *Hudson v. Hecla Mining Co.*, 86 Idaho 447, 452, 387 P.2d 893, 896 (1963): "No hard or fast rule definitive of elements of proof of those requirements of benefit eligibility 'should be or perhaps could be adopted; it must depend, at least in part, upon the particular facts and circumstances as developed in each case.'" Thus, the question of whether a claimant has met the eligibility requirements of I.C. § 72–1366 is a question of fact for the Industrial Commission to decide. *Hudson v. Hecla Mining Co., supra*. If the commission's resolution of such questions of fact is supported by substantial competent evidence on the record it will not be overturned on appeal.

■ The commission in the present case found that claimant's work-seeking efforts were not sufficient to qualify him to receive benefits. The commission specifically found that over the 20–week period in question during which claimant received benefits, he contacted at most sixteen prospective employers, or less than one employer contact per week. Under his agreement he should have contacted 60–80 employers.[1] This evidence sustains the Industrial Commission's finding that such work-seeking efforts did not meet the requirements of the eligibility review agreement or the "seeking work" requirement of I.C. § 72–1366(d). A claimant is "under a continuing duty to inquire of prospective employers for work that he is capable of performing." *Hudson v. Hecla Mining Co.*, 86 Idaho at 450, 387 P.2d at 895. Mr. Burnside's efforts in contacting employers at a rate of less than one per week did not meet his burden of proof as the commission found.

Furthermore, I.C. § 72–1366(a)(1) expressly states that a claimant must provide "all necessary information pertinent to eligibility." In the present case claimant failed to keep a current list of employer

[1]. The department, on review of claimant's asserted job contacts prior to his appeal to the appeals bureau, did give him credit for three contacts in the weeks January 12, 1985, and February 9, 1985, and allowed the benefits for those weeks to stand. The credit given for contacts during these weeks reduces even further (by at least six) the number of contacts for the 20–week period in question. Thus, instead of sixteen total contacts spread over twenty weeks, claimant has only ten to spread over that period of time.

contacts as required by the statute and his "eligibility review agreement." It was not until claimant contested the department's determination of ineligibility that he reconstructed from memory the names and approximate dates of the employer contacts made. The eligibility review agreement which claimant executed upon filing his initial claim for benefits expressly required him to make at least three to four new job contacts a week, the majority of which were to be in person. The agreement also required claimant to keep a detailed list of contacts. The agreement expressly stated that claimant's employer contacts "are subject to verification." The Industrial Commission found that the claimant had not met the requirements established in the eligibility review agreement or the provisions of I.C. § 72–1366. The Industrial Commission's decision upholding the Department of Employment's determination of ineligibility is supported by substantial competent evidence, and accordingly we affirm the same.

## II

Idaho Code Section 72–1369(a) requires that "[a]ny person who received benefits to which he was not entitled under the provisions of this act ... shall be liable to repay said benefits...." Subsection (4) of I.C. § 72–1369(a) grants limited discretion to the director of the Department of Employment or his authorized representative to waive the requirement of repayment of improperly or overpaid benefits if two express conditions are met. The first statutory condition is that it must be shown that the "payments were made *solely* as a result of department error or inadvertence," and secondly, that the payments were "made to a claimant who had *no way* of knowing that he was receiving benefits to which he was not entitled." (Emphasis added.)

■ The commission found that the director had not abused his discretion in refusing to waive repayment. While the commission was correct in finding that there was no evidence of abuse of discretion, a careful reading of the statute dis-

closes that neither of the two necessary statutory conditions were present in order to give the director any discretion to exercise in this case. Accordingly, the director had no discretionary authority to waive the repayment obligation.

In the first place, overpayment cannot be attributed *solely* to department error or inadvertence. The responsibility for overpayment of benefits lies with claimant. It was claimant's failure to meet the eligibility requirements of I.C. § 72–1366, as supplemented by the eligibility review agreement, which constituted the cause for wrongful payment of benefits. Secondly, claimant was clearly in possession of information which would lead him to believe that he was receiving benefits to which he was not entitled. The eligibility review agreement expressly provided that "failure to comply with this plan could result in denial of benefits." Furthermore, the facts booklet concerning unemployment benefits given to claimant at the time of his original filing for unemployment benefits stated, "You must be *actively seeking work* by contacting employers who normally hire individuals with your work skills." The information contained in the facts booklet, as supplemented by the requirements of the eligibility review agreement, clearly put claimant on notice that failure to actively seek work, which under the eligibility review agreement required claimant to contact three to four employers a week, would render him ineligible for benefits. Even though possessed with this information, the claimant nevertheless executed each week a certification card in which claimant represented that he was meeting the eligibility requirements imposed by the Department of Employment.

Since the statutory conditions necessary for waiver under I.C. § 72–1369(a)(4) do not exist in this case, there were no grounds upon which the director could properly exercise his discretion and waive the repayment requirement of I.C. § 72–1369. In short, no statutory grounds have been shown to exist upon which claimant could assert that the director could exercise his discretion, much less abuse it.

Accordingly, the decision of the Industrial Commission is affirmed. Costs to respondent Department of Employment. No attorney fees awarded on appeal.

SHEPARD, C.J., and DONALDSON and HUNTLEY, JJ., concur.

BISTLINE, Justice, dissenting.

The majority opinion, without so much as a "by your leave, sir," endorses a state agency acting beyond the authority granted to it by our legislature. The areas in which the Department of Employment has taken unto itself more power than that delegated to it are the following:

1. The Department had absolutely no authority to order a refund of the alleged over-payments rather than deduct the over-payments from future benefits pursuant to I.C. § 72–1369(a)(2)(A).

2. The Department lacked authority to condition Burnside's eligibility for benefits upon its eligibility review agreement.

A third problem with this case is that Burnside had no warning that failure to comply with the eligibility review agreement would result in repayment, rather than denial, of benefits.

## I.

The final paragraph of the decision of the appeals examiner states:

The claimant has received $3,287 in benefits to which he is not entitled. Requirements for waiver of that overpayment have not been met. *That amount must be refunded to the Employment Security Fund.* R., p. 6 (emphasis added).

This decision was summarily affirmed by the Industrial Commission. R., p. 20. That body, acting as an appellate court, presumably is as well, but no better, acquainted with this area of the law than this Court.

Without more, the order of a refund to be paid out of Burnside's pocket facially appears to be in violation of the mandate of I.C. § 72–1369(a)(1) and (2)(A) which specifies the exclusive methods of collection that may be employed by the Department:

**72–1369. Overpayments, collection and waiver.**—(a) Any person who received benefits to which he was not entitled under the provisions of this act or under an unemployment compensation or unemployment insurance law of any state or of the federal government shall be liable to repay said benefits and said benefits shall, for the purpose of this act, be considered to be overpayments. *Said overpayments shall be repaid as follows:*

(1) Any overpayment which has not been repaid may be collected without interest *by civil action* brought in the name of the state of Idaho;

(2) A. Overpayments, other than those resulting from a false statement, misrepresentation, or failure to report a material fact by the claimant, which have not been repaid or collected, may, at the discretion of the director or his authorized representative, *be deducted from any future benefits payable* to said claimant under this act;

B. Overpayments resulting from a false statement, misrepresentation, or concealment of a material fact by the claimant which have not been repaid or collected shall *be deducted from any benefits payable at any time in the future*, without regard to any statute of limitation and such overpayments not recovered with eight (8) years from the date of the final determination establishing liability to repay may be deemed uncollectible; .... I.C. § 72–1369 (Cum.Supp.1986) (emphasis added).

Thus, the legislature unambiguously granted the Department two avenues by which it might seek repayment. If reimbursement or refund is sought, recourse must be had through the district court in a civil action brought in the name of the state of Idaho. The only other collection method is an administrative one involving deduction of the overpayment from future benefits. The statute is phrased in the mandatory: "Said overpayments *shall* be repaid as follows."

However, here the Department simply evades the commandment of the legislature by taking neither one route nor the other. It declares a refund due itself and, yet, the record discloses that it has filed no civil action in district court.

Why the Department did not earlier deduct the overpayments, if such in reality there were, from future benefits, the administrative avenue of collection, is obvious. By delaying an eligibility review until the virtual end of Burnside's claim period, there were left little or no future benefits to offset the overpayments. Burnside was classified "BO4," which means that his work search was supposed to be reviewed on an approximate four-week basis. R., p. 3. But the Department waited *five months* before making a review, which was approaching the end of the typical maximum benefit period of six months. Thus, the Department has obtained the Industrial Commission's approval of a collection method unauthorized by the legislature, and a majority of this Court stands "at the ready" to endorse that approval.

### II.

The Department lacked authority to condition Burnside's eligibility for benefits upon its eligibility review agreement. The most serious defect in the appeals examiner's decision, the Commission's order, and the majority opinion, is that all treat the Department's eligibility review agreement with a deferential solemnity it does not merit. As discussed *infra*, at all times pertinent to this appeal, from October, 1984, to March, 1985, the Department was without authority to command strict compliance with a work search agreement drafted at the discretion of a Department representative. Clearly, it was a contract of adhesion and not an agreement reached by mutual participation. Actually, it was not an agreement. The Department said "sign this," and Burnside's choice was either to sign it or to not sign it.

In 1983, the legislature enacted a revealing amendment of I.C. § 72–1366, the statute here at issue:

72–1366. Personal Eligibility Conditions. The personal eligibility conditions of a benefit claimant are that—

. . . .

(f) His unemployment is not due to his failure without good cause to apply for available suitable work ~~as directed by a representative of the director~~ or to accept suitable work when offered to him, . . . . I.C. § 72–1366(f) (1983 Session Laws).

The director of the Department of Employment has always had the power to adopt rules and regulations necessary for the administration of our Employment Security Law. I.C. 72–1333 (1973). However, the 1983 revisions to I.C. § 72–1366(f) establish that the legislature withdrew from the director's representatives the power to dictate the details of a claimant's work search. While the director had the power to promulgate rules to fill this void, he did not do so until two years later in 1985 when the following established categories of work seeking activity were published:

30.131 Claimants shall seek work in accordance with established categories of workseeking activity as instructed by a Department representative.

30.131,01 Code 0: Claimants in this workseeking group will be required to do at least one of the following: maintain regular contact with their employer; make local inquiries; maintain contact with Job Service; check "help-wanted" ads in newspapers or trade publications.

30.131,02 Code 1: Claimants in this workseeking group will be required to do at least one of the following: send resumes to firms/businesses that hire people with their skills; make at least one employer contact each week either in person or by phone; attend a Job Opportunity Workshop.

30.131,03 Code 2: Claimants in this workseeking group will be required to do at least one of the following: make at least two employer contacts with at least one in-person contact each week; expand work search efforts to sur-

rounding areas or states; attend a Job Opportunity Workshop.

30.131,04 Code 3: Claimants in this workseeking group will be required to do at least one of the following: make at least three employer contacts with at least two in-person contacts each week; enroll and attend a specific training program to achieve employment plan Ref.Sec. 72–1366(d) and (f) *Idaho Code* (11–85) IDAPA, 09.30.131,-01–04.

But Burnside's claim for benefits was initiated in the interim, October 1984, when Department representatives had neither the authority to direct the details of a claimant's work search nor the precise 1985 categories to guide them. Instead, all that was available was one rule and one statute both worded in very general terms. The rule is as follows: "30.126 A claimant will be expected to do what is normally done by unemployed persons that are seeking work. Ref.Sec. 72–1366(d) *Idaho Code* (12–78)." IDAPA 09.30.126. The statute is the following portion of I.C. § 72–1366(d) (Cum. Supp.1986): "The personal eligibility conditions of a benefit claimant are that— ... During the whole of any week with respect to which he claims benefits or credit to his waiting period he was able to work, available for suitable work, and seeking work; ...."

The language "able to work, available for suitable work, and seeking work" has not been defined by the legislature in our Employment Security Law. While the phrase "seeking work" has not had occasion to be construed by this Court, the words "available for suitable work" have:

While, as above noted, our Act requires, among other things, that one must be available for suitable work in order to be eligible for benefit payments where he is unemployed through no fault of his own, the phrase "available for suitable work" is not defined in the Act. At no previous time has this court been called upon, under such facts as herein developed, to construe or interpret its meaning. This phrase is somewhat similar to or in the exact language employed in the respective compensation laws in all American jurisdictions and has been considered and treated rather thoroughly in some courts of last resort.

An examination of the cases from many jurisdictions justifies the conclusion that no hard and fast rule as to what constitutes availability for work should be or perhaps could be adopted; it must depend, at least in part, upon the particular facts and circumstances as developed in each case; as a general proposition, the availability requirements of the statute are met in instances where the worker is able, ready and willing to accept and is seeking suitable work at a point where an available labor market exists. [Citations omitted.] *Claim of Sapp*, 75 Idaho 65, 69, 266 P.2d 1027, 1029 (1954); *see also Guillard v. Department of Employment*, 100 Idaho 647, 603 P.2d 981 (1979).

The language of the Court in *Sapp* boils down to this: The statutory "available for suitable work" is satisfied by what is reasonable under the circumstances. Similarly, in the absence of any statutory definition or detailed administrative rule, reasonableness under the circumstances is an adequate standard to test the merit of Burnside's job seeking activities. It bears repeating that the Department's own rule, in effect at the time in question, stated only that "[a] claimant will be expected to do what is normally done by unemployed persons that are seeking work." IDAPA 09.-30.126, *supra*.

Burnside was able to document contacts with twelve employers. He contacted each of them from one to three times. He produced letters from six of them that corroborated his testimony. In addition, he testified that he made several telephone calls in response to want ads that he did not record. He also asked friends and acquaintances repeatedly if they had work or knew others that were hiring. However, the appeals examiner found Burnside's testimony regarding his undocumented contacts to not be credible. R., p. 5. The Industrial Commission followed suit, notwithstanding its knowledge of a time-honored case which passed through it, *Pierstorff v. Gray's Auto Body Works*, 58 Idaho 438, 74 P.2d 171 (1937).

Was Burnside's job search reasonable under the circumstances? Did he do what is normally done by unemployed persons that are seeking work? The only fair answer is in the affirmative. It bears noting that a claimant is not required, initially, to seek work that is far from home or substantially less favorable with regard to wages, hours, or other conditions or work. I.C. § 72–1366(g)(2), 72–1366(f) (Cum.Supp. 1986). Despite this, Burnside did apply for lower paying, even minimal wage, jobs. Ultimately, the inquiry becomes what was reasonable under the circumstances for a person with Burnside's employment background in the geographic area of Idaho Falls?

Of course, the appeals examiner and the Industrial Commission used the standard of the eligibility review agreement—three to four *new* employer contacts per week, the majority of them in person, and a detailed list of contacts—in rejecting, after the fact of payment, Burnside's benefits. As discussed above, however, the Department was without authority to condition the payment, or repayment, of benefits upon compliance with the details of this agreement. Nor was Burnside instructed to keep a Navy-type daily of his endeavors and contacts made.

At the time his employment was suspended, Burnside was earning $8.44 an hour as a skilled warehouseman in the steel industry. One might well ask whether there are sufficient similar jobs in the Idaho Falls area to support a requirement of three to four *new* employer contacts per week? It would be strangely out of character for me to join a majority decree which derides Burnside's efforts as not reasonable under the circumstances.

This Court, in a recent lucid interval, applied the excellent rule of construction that the Employment Security Act was enacted to alleviate the hardships of involuntary employment, I.C. § 72–1302 (1973), and will be construed liberally to effectuate that purpose:

> It is clearly the intent of the legislation that benefits be granted or denied based upon matters of substance rather than mere form, and the act will be construed

to effectuate that intent. *Davenport v. Department of Employment*, 103 Idaho 492, 494, 650 P.2d 634, 636 (1982) (Justice Shepard writing for a four-member majority, including myself and Justice Donaldson).

The denial of benefits based upon a failure to comply with the strict requirements of the agreement here under attack is more than a denial based upon mere formalism. It is unauthorized, illegal, and void; it is axiomatic, under the principles of administrative law, that an agency cannot act *ultra vires;* that is, it cannot assume more power than the legislature delegated to it. The Department's action, ratified by this Court, will elevate, rather than alleviate, the hardships of involuntary unemployment on this Mr. Burnside and countless other Mr. Burnsides down the line.

### III.

Finally, were we to accept for the sake of argument that the Department properly conditioned benefits upon compliance with the eligibility review agreement, Burnside received no warning whatever that he might be held liable to repay the benefits which were received. Both the Agreement and the fact booklet given him stated that failure to comply with Department requirements could result in denial of benefits, *not repayment of benefits*. The difference is not trivial. One who is clearly on notice that he may have to *repay* benefits out of his pocket for not following the bureaucracy rules and regulations would by nature be more careful to ask questions in amplification than one who is told merely that he might not *receive* benefits if he does not comply. All that would be required to supply unambiguous notice would be for the Department's forms and publications to refer to the applicable statute, I.C. § 72–1369. That this is not a novel idea is demonstrated by the fact that the Department's Eligibility Redetermination Form prints I.C. § 72–1312 and I.C. § 72–1366 in their entirety on the back of the form.

Back of it all, it must be remembered that during the period during which Burnside received payment, and during which he was supposed to be searching for work, the relationship of employer-employee still ex-

isted between Burnside and Gate City Steel—Burnside was only suspended, not terminated. If he were lucky enough to find some company interested in utilizing his services, that interest would quickly wane when the potential employer asked and found out the status of his employment which had terminated and the reason therefore. The Department's attitude in this situation is totally out of touch with reality. On the other hand, Burnside, being in the most disfavored of circumstances, did conscientiously make an effort to find work. His chances were slim to none.

One wonders, were a member of this Court to be suspended under like circumstances, what would be the chances of seeking and finding other work, where it is readily seen that even if one found a compassionate potential new employer, he would not be too interested in getting involved until the outcome of the charges was determined—at which time then a strong likelihood would be the withdrawal of the suspension.

The injustice done Burnside is grievous, and perhaps on par with that done to Rita Carlson and to Patricia Small.[1]

---

**1.** *Carlson v. Center of Resources for Independent People,* 109 Idaho 1053, 712 P.2d 1161 (1985); *Small v. Jacklin Seed Co.,* 109 Idaho 541, 709 P.2d 114 (1985). Observe that in the *Jacklin* case, the Commission, given the opportunity to do so, rectified the injustice immediately.