817 P.2d 1069

**Debra Ann LANG, Claimant–Appellant,**

v.

**USTICK DENTAL OFFICE, P.A.,
Employer–Respondent,**

and

**State of Idaho, Department of
Employment, Respondent.**

No. 17342.

Supreme Court of Idaho,
Boise, November 1989 Term.

Sept. 9, 1991.

Rehearing Denied Oct. 17, 1991.

Brian N. Donesley, Boise, for claimant-appellant.

Jim Jones, Idaho Atty. Gen., John C. Hummel, Deputy Atty. Gen., Boise (argued), for respondent Dept. of Employment.

BOYLE, Justice.

This case involves an appeal from a decision of the Industrial Commission which denied unemployment compensation to Debra Ann Lang. An appeals examiner for the Department of Employment found Lang had been discharged for misconduct and denied her claim for unemployment compensation benefits. The Industrial

Commission conducted a de novo review of the record pursuant to I.C. § 72–1368(g), and no additional evidence was admitted. The Commission held that claimant was not entitled to unemployment compensation benefits because she had been discharged for misconduct. We affirm.

## I.

### FACTS

Lang was employed by the Ustick Dental Office as an office manager. Her primary duties entailed collecting accounts receivable and supervising the office staff. Lang was discharged from her employment on January 27, 1987, and thereafter filed for unemployment compensation benefits. In opposing Lang's claim for benefits, the employer asserted that claimant was discharged for employment related misconduct. The Department of Employment appeals examiner agreed and denied Lang's claim for unemployment compensation benefits. After de novo review on appeal the Industrial Commission made factual findings based on the record and likewise denied Lang's claim for unemployment benefits. The Commission found:

It appears that the Claimant's work was satisfactory to the two dentists who operated Ustick Dental Office until the fall of 1986.

### II

In September, October and November of 1986 Claimant and her employers were negotiating a change in her compensation. Claimant was dissatisfied with the proposals made by her employers. No agreement was reached between them. She rejected the final proposal by written rejection, making it clear that she was dissatisfied with the proposal and indicating that she may not continue her employment. She did, however, continue to work for the Employers but she did not receive the compensation she desired.

### III

Subsequent to the unsatisfactory resolution of the negotiations, the Employers became dissatisfied with the Claimant's work performance. Several patients were lost due to the Claimant's abrasive personal contacts with the patients. She called patients at their places of employment, though she was asked not to do so. She was rude to one patient in connection with an insurance claim and also rude to that patient's supervisor who was, incidentally, also a patient at the dental office. Dr. Reynolds, one of Claimant's employers, began to receive complaints.

### IV

Written complaints were sent by patients to the dental office. These complaints were intercepted by Claimant and not shown to Dr. Reynolds. Dr. Reynolds also received complaints from employees whom Claimant supervised concerning Claimant's treatment of them.

R., pp. 51–52. The Commission concluded Lang was ineligible for unemployment benefits because,

Claimant's conduct was in some respects willful and intentional. Even if it was not, however, it was clearly a disregard of the standards of behavior which the employer has the right to expect of its employees. Employer's expectations in this case were objectively reasonable and Claimant's conduct fell below that standard.

R., at 53.

## II.

### STANDARD OF JUDICIAL REVIEW

■■■ This Court's review of Industrial Commission decisions is limited by the Idaho Constitution and our prior cases which limit review only to questions of law. Idaho Constitution, art. 5 § 9; *Jensen v. Siemsen,* 118 Idaho 1, 794 P.2d 271 (1990); *Spruell v. Allied Meadows Corp.,* 117 Idaho 277, 787 P.2d 263 (1990); *Puckett v. Idaho Dept. of Corrections,* 107 Idaho 1022, 695 P.2d 407 (1985); *Parker v. St. Maries Plywood,* 101 Idaho 415, 614 P.2d 955 (1980); *Harris v. Green Tree, Inc.,* 100 Idaho 227, 596 P.2d 99 (1979); *Simmons v.*

*Department of Employment,* 99 Idaho 290, 581 P.2d 336 (1978); *Booth v. City of Burley,* 99 Idaho 229, 580 P.2d 75 (1978); *Hutchinson v. J.R. Simplot Co.,* 98 Idaho 346, 563 P.2d 404 (1977). Further, our review in cases involving factual disputes is restricted to determining whether findings of fact by the Industrial Commission are supported by substantial and competent evidence in the record. *Jensen v. Siemsen,* 118 Idaho 1, 794 P.2d 271 (1990); *Spruell v. Allied Meadows Corp.,* 117 Idaho 277, 787 P.2d 263 (1990); *Burnside v. Gate City Steel Corp.,* 112 Idaho 1040, 739 P.2d 339 (1987); *Ullrich v. Thorpe Elec.,* 109 Idaho 820, 712 P.2d 521 (1985); *Booth v. City of Burley,* 99 Idaho 229, 580 P.2d 75 (1978). As we recently reaffirmed in *Spruell* and *Jensen,* quoting from *Booth v. City of Burley,* we decline to "independently adopt findings of fact at variance with those of the Industrial Commission where such findings are supported by substantial and competent evidence in the record. Prior decisions suggesting a contrary result are, to this extent, hereby expressly overruled." 99 Idaho at 232, 580 P.2d at 78. Similarly, where the factual findings of the Industrial Commission are sustained by substantial and competent, though conflicting evidence, they will not be reversed on appeal. *Jensen v. Siemsen,* 118 Idaho 1, 794 P.2d 271 (1990); *Spruell v. Allied Meadows Corp.,* 117 Idaho 277, 787 P.2d 263 (1990); *Kyle v. Beco Corp.,* 109 Idaho 267, 707 P.2d 378 (1985); *Wood v. Quali-Dent Dental Clinics,* 107 Idaho 1020, 695 P.2d 405 (1985); *Cornwell v. Kootenai County Sheriff,* 106 Idaho 823, 683 P.2d 859 (1984). It is well established that we will defer to the findings of the Industrial Commission when those findings are supported by substantial and competent evidence. Idaho Constitution art. 5 § 9; *Spruell v. Allied Meadows Corp.,* 117 Idaho 277, 787 P.2d 263 (1990); *Guillard v. Department of Employment,* 100 Idaho 647, 603 P.2d 981 (1979).

The Industrial Commission's responsibility and scope of review in employment matters is set forth in I.C. § 72–1368(g) which provides in pertinent part:

(g) The commission shall decide all claims for review filed by any interested party in accordance with its own rules of procedure not in conflict herewith. The record before the commission shall consist of the record of proceedings before the appeals examiner, unless it appears to the commission that the interests of justice require that the interested parties be permitted to present additional evidence. In that event, the commission may, in its sole discretion, conduct a hearing to receive additional evidence or may refer the matter back to the appeals examiner for an additional hearing and decision. On the basis of the record of proceedings before the appeals examiner as well as any additional evidence, if allowed, the Commission shall affirm, reverse, modify, set aside or revise the decision of the appeals examiner or may refer the matter back to the appeals examiner for further proceedings. (Emphasis added.)

The legislature provided for a de novo review before the Industrial Commission based on the record of the appeals examiner. The record demonstrates that the Industrial Commission properly reviewed the record of the appeals examiner in making its findings and correctly applied Idaho law in making its determination regarding Lang's eligibility to receive unemployment benefits. Idaho Code § 72–1366(e) sets forth the personal eligibility requirements and denies eligibility to receive unemployment benefits to anyone discharged for misconduct in connection with their employment. Misconduct has been defined in our prior cases to mean "willful, intentional disregard of the employer's interest; a deliberate violation of the employer's rules; or a disregard of standards of behavior which the employer has a right to expect of his employees." *Jensen v. Siemsen,* 118 Idaho 1, 794 P.2d 271 (1990); *Spruell v. Allied Meadows Corp.,* 117 Idaho 277, 787 P.2d 263 (1990); *Johns v. S.H. Kress & Co.,* 78 Idaho 544, 307 P.2d 217 (1957); *Puckett v. Idaho Dep't of Corrections,* 107 Idaho 1022, 695 P.2d 407 (1985); *Goolsby v. Life Savers,* 107 Idaho 456, 690 P.2d 911 (1984); *Roll v. City of Middleton,* 105 Idaho 22,

665 P.2d 721 (1983); *Matthews v. Bucyrus–Erie Co.*, 101 Idaho 657, 619 P.2d 1110 (1980).

In *Matthews*, we held:

There is no requirement in the *Johns* definition of misconduct that the claimant's disregard of standards of behavior must be found to have been subjectively willful, intentional or deliberate. Rather, the test for misconduct in standard of behavior cases is (1) whether the employee's conduct fell below the standard of behavior expected by the employer; and (2) whether the employer's expectation was objectively reasonable in the particular case. The employee's subjective state of mind is irrelevant.

101 Idaho at 659, 619 P.2d at 1112. This test has been consistently reaffirmed by this Court on numerous occasions and is well established precedent in Idaho. *Spruell v. Allied Meadows Corp.*, 117 Idaho 277, 787 P.2d 263 (1990); *Puckett v. Idaho Dep't of Corrections*, 107 Idaho 1022, 695 P.2d 407 (1985); *Goolsby v. Life Savers*, 107 Idaho 456, 690 P.2d 911 (1984).

██ Whether a claimant has disregarded the standards of behavior which the employer has a right to expect from its employees is a factual determination to be made by the Industrial Commission. *See Burnside v. Gate City Steel Corp.*, 112 Idaho 1040, 739 P.2d 339 (1987); *Goolsby v. Life Savers, Inc.*, 107 Idaho 456, 690 P.2d 911 (1984). In this case the Commission determined Lang's behavior constituted misconduct because "it was clearly a disregard of the standards of behavior which the employer [had] the right to expect of its employee," and because her "conduct was in some respects willful and intentional." The Commission reached this determination after reviewing the record of the appeals examiner. We too have reviewed the record and are compelled to uphold the Commission's findings which we deem to be supported by substantial evidence. *Jensen v. Siemsen*, 118 Idaho 1, 794 P.2d 271 (1990); *Spruell v. Allied Meadows Corp.*, 117 Idaho 277, 787 P.2d 263 (1990); *Burnside v. Gate City Steel Corp.*, 112 Idaho 1040, 739 P.2d 339 (1987); *Ullrich v. Thorpe Elec.*, 109 Idaho 820, 712 P.2d 521 (1985); *Kyle v. Beco Corp.*, 109 Idaho 267, 707 P.2d 378 (1985); *Booth v. City of Burley*, 99 Idaho 229, 580 P.2d 75 (1978). A review of the record reveals conflicting evidence. However, there is substantial and competent evidence to support the Commission's findings that the employer became dissatisfied with her work performance after patients were lost due to her making contact at the patients' places of employment and treating patients in a rude and abusive manner. The record further supports a finding that the employer received complaints about Lang from patients and co-employees, and she intercepted and did not deliver several written complaints about her addressed to the employers. The findings of the Industrial Commission are supported by substantial and competent evidence and will not be disturbed on appeal.

Lang has raised several other issues on appeal which are without merit. The decision of the Industrial Commission is affirmed. Costs to respondent.

BAKES, C.J., and JOHNSON and McDEVITT, JJ. concur.

BISTLINE, Justice, dissenting.

An alternative opinion in this case reversing the Industrial Commission was written, but unfortunately it garnered no votes. Still believing it to be the correct resolution of this case, it is set out in full as follows:

"Debra Ann Lang began working for Dr. Reynolds' Ustick Dental Office, as an office manager in March 1985. Her responsibilities included supervision of office staff, collection of accounts receivable, and management of insurance matters. She was an experienced office manager and collections officer.

"Dr. Reynolds testified that prior to the fall of 1986, he had been satisfied with Lang's work performance. He further testified that in the fall of that year, salary and benefit negotiations ended unsatisfactorily from Lang's point of view. The dispute over Lang's wages and benefits continued into 1987.

"Dr. Reynolds testified that in the fall of 1986, he began receiving complaints from patients about Lang. He stated that some patients were offended by Lang's behavior in the context of debt collections. Two patients wrote letters of complaint to Dr. Reynolds detailing their experience with Lang's collection of their delinquent accounts.

"On January 27, 1987, Lang was terminated from her employment based upon what Dr. Reynolds termed her 'attitude.' She filed a claim for unemployment benefits effective January 25, 1987. The Department's initial determination notified claimant of her eligibility for benefits. Dr. Reynolds protested and a hearing was held in Boise on April 3, 1987.

"The appeals examiner found that Lang's actions during her employment were deliberate and constituted an employment-related misconduct. The Industrial Commission reviewed this decision and found that Lang's employment conduct fell below the standard of behavior expected by a reasonable employer, thus constituting misconduct in her employment. The Commission denied Lang's motion for rehearing or reconsideration.

"Lang appeals the Commission's rulings. Her appeal requires us to consider the following issue:

Whether substantial competent evidence establishes that the employer met its burden of proving that Lang was discharged for misconduct in connection with her employment?

"An analysis of this issue requires a three-step inquiry. First we examine whether the commission applied the correct definition of 'misconduct' in connection with employment. Second, we examine whether the Commission's finding of intentional misconduct is supported by substantial competent evidence. Finally, we examine whether the Commission was correct in determining that the employer carried its burden of proving Lang committed misconduct during the course of her employment.

## THE DEFINITION OF 'MISCONDUCT'

"The definition of misconduct in the course of employment has vexed this Court over a period of more than thirty years. Construction of Idaho's employment security law is guided by the declaration of state public policy contained in I.C. § 72–1302 (1973), which provides in pertinent part:

The legislature, therefore, declares that, in its considered judgment, the public good, and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, and for the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own.

The requirement that persons must be unemployed through no fault of their own in order to be entitled to unemployment compensation benefits surfaces in another statute stating the personal eligibility conditions for unemployment compensation. I.C. § 72–1366 (Supp.1988) provides in relevant part:

The personal eligibility conditions of a benefit claimant are that—(f) His unemployment is not due to the fact that he left his employment voluntarily without good cause, or that he was discharged for misconduct in connection with his employment.

"The definition of 'misconduct' has troubled this Court for several decades. Unfortunately our legislature has provided no guidance since our employment security law contains no statute defining 'misconduct.' Over the years two lines of cases have advanced competing definitions of 'misconduct' in connection with employment. Both lines of cases base their definition upon the following language which first appeared in *Mandes v. Employment Security Agency*, 74 Idaho 23, 25, 255 P.2d 1049, 1050 (1953):

Misconduct within the meaning of an unemployment compensation act excluding from its benefits an employee discharged for misconduct must be an act of wanton or wilful disregard of the employers interest, a deliberate violation of

the employers rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show *an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer. . . .*

(Emphasis added.)

"The first line of cases beginning with *Mandes* defines misconduct to include the requirement of intentional conduct on the part of the employee. This line of cases requires an intentional disregard of the employer's interests, an intentional violation of employer's rules, and/or an intentional disregard of standards of behavior which the employer has the right to expect of his employee. These cases do not categorize types of misconduct into discrete categories. They are typified by *Mandes, Johns v. S.H. Kress & Co.*, 78 Idaho 544, 307 P.2d 217 (1957); *Wroble v. Bonners Ferry Ranger Station*, 97 Idaho 900, 556 P.2d 859 (1976); *Hutchinson v. J.R. Simplot Co.*, 98 Idaho 346, 563 P.2d 404 (1977); *Simmons v. Department of Employment*, 99 Idaho 290, 581 P.2d 336 (1978); and *Beaty v. City of Idaho Falls*, 110 Idaho 891, 719 P.2d 1151 (1986).

"These cases hold that the *sine qua non* of employment-related misconduct is an intentional, wilful disregard of an employer's rules or best interests. As stated in *Johns*, 'The discharge of an employee for intentional wilful misconduct deprives him of the right to unemployment compensation.' 78 Idaho at 548, 307 P.2d at 219. In *Mandes*, in applying that legal definition of misconduct to the facts in that case, the Court stated:

Whether or not appellant was mistaken in thinking he was being permanently placed at the hoist inside the mine, the directions as he received them, or as he understood them, as given by Cole and the shifter were somewhat conflicting and confusing. He was not recalcitrant or capricious in his refusal to return to

the hoist, but apparently was justifiably concerned about his health, knowing he had an incurable condition which, though perhaps not aggravated by the smoke and dust, was at least irritated thereby. *Therefore, there is absent any element of wilfulness, essential to constitute misconduct.*

74 Idaho at 28, 255 P.2d at 1052 (emphasis added).

"Another more recent line of cases begins with *Matthews v. Bucyrus–Erie Co.*, 101 Idaho 657, 619 P.2d 1110 (1980). Progeny of *Matthews* are: *Roll v. City of Middleton*, 105 Idaho 22, 665 P.2d 721 (1983); *Goolsby v. Life Savers Inc.*, 107 Idaho 456, 690 P.2d 911 (1984); *Puckett v. Idaho Dept. of Corrections*, 107 Idaho 1022, 695 P.2d 407 (1985); and *Davis v. Howard O. Miller Co.*, 107 Idaho 1092, 695 P.2d 1231 (1985); and *Spruell v. Allied Meadows Corp.*, 117 Idaho 277, 787 P.2d 263 (1990).

"*Matthews*, the progenitor, derived its statement of the definition of misconduct from *Johns v. S.H. Kress & Co.*, 78 Idaho 544, 307 P.2d 217, which relied upon a selected portion of the definition contained in *Mandes*. The *Johns* language defining misconduct is as follows:

While the term "discharged for misconduct" as used in § 72–1366(f), I.C. has been variously defined, we think the term should be interpreted as meaning wilful, intentional disregard of the employer's interest; a deliberate violation of the employer's rules; or a disregard of standards of behavior which the employer has a right to expect of his employees.

78 Idaho at 548, 307 P.2d at 219.

"The *Matthews* majority, seizing that statement in *Johns*, but ignoring headnote 4 of *Johns* to the effect that the discharge of an employee for intentional wilful misconduct deprives him of the right to unemployment compensation, created distinct categories and in so doing manufactured a separate category of misconduct which does not require intentional misconduct. The *Matthews* Court appears to have been judicially legislating:

While the term "discharged for misconduct" as used in § 72–1366(f), I.C. [now I.C. § 72–1366(e)] has been variously defined, we think the term should be interpreted as meaning wilful, intentional disregard of the employer's interests; a deliberate violation of the employer's rules; *or a disregard of standards of behavior which the employer has the right to expect of his employees.* 78 Idaho at 548, 307 P.2d at 219 (emphasis added).

This definition was recently reaffirmed as the law in Idaho in *Jenkins v. Agri–Lines Corp.,* 100 Idaho 549, 602 P.2d 47 (1979). [footnote omitted] There is no requirement in the *Johns* definition of misconduct that the claimant's disregard of standards of behavior must be found to have been subjectively wilful, intentional or deliberate. *Rather, the test for misconduct in standard of behavior cases is (1) whether the employee's conduct fell below the standard of behavior expected by the employer; and (2) whether the employer's expectation was objectively reasonable in the particular case. The employee's subjective state of mind is irrelevant.*

*Matthews v. Bucyrus–Erie Co.,* 101 Idaho at 659, 619 P.2d at 1112 (emphasis added).

"Thus, the *Matthews* Court, so indulging itself, perhaps to achieve a particular desired result, carved out a separate category of misconduct cases in which intentional conduct by the employee is not required.

"A ringing dissent to that opinion, authored by Justice McFadden, succinctly and accurately details how, where, and why the *Matthews* majority went awry, and for facility of continuity, it is repeated:

In *Johns v. S.H. Kress Co.,* 78 Idaho 544, 548, 307 P.2d 217, 219 (1957), this court stated that 'misconduct' such as to lead to the denial of unemployment compensation benefits under I.C. § 72–1366(e) could take three forms. The majority cites *Johns* and lists the *three* forms: disregard of the employer's interest, violation of its rules, or disregard of standards of behavior which the employer has a right to expect from its employ-

ees. For the first time in the 23 year history of the *Johns* standard, attention is now called to the fact that when the promulgating court listed the three forms of misconduct it appended words indicating a requirement of intent to the first two but not to the third. In so doing, the majority takes the unprecedented position that unemployment compensation benefits may be denied to a claimant who has acted unintentionally. Because I believe this new stance is not supported by the employment security law itself, by the pertinent Idaho cases, or by common sense, I respectfully dissent.

Chapter 13 of Title 72 of the Idaho Code comprises the 'Employment Security Law,' I.C. § 72–1301, which, among other things, defines eligibility for unemployment compensation benefits. Section 72–1302 acknowledges the hardships which unemployment imposes on individuals, and states that the act's purpose is to relieve some of these hardships for individuals who 'become unemployed *through no fault of their own.*' (Emphasis added.) The drafters of the act thus specifically included fault as a crucial element in determining the reach of its benefits.

My search has yet to reveal a single Idaho case where unemployment benefits were denied an individual whose misconduct was other than intentional. [Footnote omitted.] In at least one case, in fact, the court held benefits awardable because the misconduct was only inadvertent. *Wroble v. Bonners Ferry Ranger Station,* 97 Idaho 900, 556 P.2d 859 (1976). Indeed, *Johns* itself involved an intentional act, so that its language referring to a different state of mind is dicta. In the sentence which immediately follows the language quoted by the majority the *Johns* court summarized its position and stated its holding: '[t]he discharge of an employee for *intentional, wilful* misconduct deprives him of the right to unemployment compensation.' 78 Idaho at 548, 307 P.2d at 219 (emphasis added).

The language of *Johns* was not original. It first appeared in Idaho in a case decided some four years earlier, *Mandes v. Employment Sec. Agency*, 74 Idaho 23, 255 P.2d 1049 (1953). In *Mandes* the language was given proper attribution, the court noting its origin in 48 Am.Jur. § 38, pp. 541–2. A look at the full text of the Am.Jur. section indicates that its authors, at least, had no doubt about the requirement of intentional conduct. They wrote that to deny benefits there

> 'must be an act of wanton or wilful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.
>
> . . . .
>
> Neither is mere inefficiency, unsatisfactory conduct, errors in judgment, or the like to be deemed misconduct [citation omitted].'

The authors of the source relied on by the *Johns* court were careful to address the problem of employee negligence which led to discharge, and to note that it could be considered 'misconduct' so as to deny benefits only when it functionally amounted to intentional conduct. It specifically ruled out considering errors in judgment to be 'misconduct.' The updated Am.Jur.2d position is similar, although more explicit:

> "Work-connected negligence or inefficiency constitutes misconduct within the meaning of an unemployment compensation statute precluding a discharged employee from unemployment compensation benefits when the negligence or inefficiency is of such degree or recurrence as to manifest culpability, wrongful intent, evil design, or an intentional or substantial disregard of an employer's interests or of an employee's duties and obligations. Conversely, mere inefficiency, unsatisfactory conduct, *failure of good performance as the result of inability or incapacity*, inadvertencies, isolated instances of ordinary negligence, or good-faith errors in judgment or discretion, are not considered misconduct for this purpose." 76 Am.Jur.2d Unemployment Compensation § 54, p. 948 (emphasis added, citations omitted).

*See* CCH Unemployment Insurance Rptr., Vol. 1B, ¶ 1970.

In addition, neither of the decisions of this court which held a claimant ineligible for benefits as a result of a violation of standards of conduct which the employer had a right to expect involved unintentional conduct. *Rasmussen v. Gem State Packing Co.*, 83 Idaho 198, 360 P.2d 90 (1961) (placing metal chain in scrap barrel bound for processing equipment not suited to handle metal); *O'Neal v. Employment Sec. Agency*, 89 Idaho 313, 404 P.2d 600 (1965) (postman discharged after being convicted of lewd and lascivious conduct with minor). In fact, the court has even held that the three categories of *Johns* are not discrete, and that violation of any one of them does not automatically lead to a denial of benefits. *Wroble v. Bonners Ferry Ranger Station*, 97 Idaho 900, 556 P.2d 859 (1976); *Hutchinson v. J.R. Simplot Co.*, 98 Idaho 346, 563 P.2d 404 (1977). This suggests how inappropriate is the kind of close reading indulged in by the majority.

All aside from the limits placed on our construction of I.C. § 72–1366(e) by the act itself and by prior cases, the majority's approach has unfortunate policy results. To the extent that an employee realizes that misconduct may result in termination without benefits, that misconduct is deterred. Yet there can be no deterrent value in penalizing conduct which is unintentional since the actor, by definition, cannot ponder the consequences of the action. I would also note that under the majority's construction, a denial of benefits based on a violation of the employer's rules requires intentional conduct, while the denial could be based

on an *un*intentional, even good faith, breach of "standards of behavior which the employer has a right to expect of his employees." To require a showing of more extreme conduct for the violation of duly promulgated rules of the employer places a premium on non-promulgation, and runs counter to notions of due process.

It would not be unkind to say that there are certain aspects of Matthews' story which strain the bounds of believability, and it is clear that the majority here seeks to remedy what strikes it as an inequitable result. But the Industrial Commission explicitly decided that Matthews did not act intentionally when he decamped for Alaska, and its conclusion, is supported by substantial although obviously conflicting, evidence. I am not sufficiently interested in denying this claimant benefits that I would rewrite a significant portion of the employment security law to accomplish the task. I would affirm the Commission's decision. *Matthews*, 101 Idaho at 659–661, 619 P.2d at 1112–1114.

"Today's review of Justice McFadden's dissent in *Matthews* shows it to be a convincing refutation of the *Matthews* line of cases. To bring more clarity and stability into this area of the law, they are now overruled. The definition of misconduct that will apply to this case, to future unfiled cases, to all pending cases, and all cases which have not yet come to final

judgment and disposition by way of appeal, is that the employer bears the burden of proving a deliberate or wilful disregard of the employer's interests or a deliberate violation of the employer's rules which constitutes *an intentional and substantial* disregard of the employer's interests or of the employee's duties and obligations to the employer.[1] In that manner we make some recompense to the Industrial Commission for this Court's unjustified intrusion into an area wherein traditionally, prior to *Matthews*, the Court deferred to the expertise of the Commission. *See* dissenting opinions in *Matthews*, 101 Idaho at 659–63, 619 P.2d at 1112–16.

"As stated by Justice Shepard in *Wroble v. Bonners Ferry Ranger Station*, 97 Idaho 900, 556 P.2d 859, *the intentional misconduct must be substantial* in order to justify a bar to unemployment compensation benefits. *See, Wroble* 97 Idaho at 902, 556 P.2d at 861. This construction of the term 'misconduct,' left undefined by our legislature, complies with our case law rule that our unemployment compensation statutes are to be liberally construed in favor of the employee. *Mandes*, 74 Idaho at 28, 255 P.2d at 1052. It also accords with the statutory directive that monetary reserves be set aside for the benefit of persons unemployed *through no fault of their own.* I.C. § 72–1302(a).

"The mischief engendered by the *Matthews* definition of misconduct is that by not requiring a substantial, wilful and in-

---

1. The requirement of *intentional* misconduct prevails generally throughout the nation. The leading treatise on unemployment compensation states the following:

It is generally held that in order to justify a finding of misconduct the matter must be within the individual's control and the behavior must be such as to show an intentional breach of the worker's obligations toward his employer. It has also been held that the conduct must be wilful or wanton.

The courts in many jurisdictions and many administrative agencies follow the definition of misconduct as construed by the Wisconsin Supreme Court in *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 296 N.W. 636 (1941). The court said:

'... the intended meaning of the term "misconduct" ... is limited to conduct evincing such wilful or wanton disregard of an em-

ployer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.'

1B Unemployment Insurance Reporter, (CCH), § 1970, pp. 4451–3.

tentional disregard of the employer's interests, the line between 'misconduct' which is sufficient to justify a discharge of the employee from employment, has become confused with *the substantial and intentional misconduct* which is required to justify a bar to unemployment compensation benefits. The *Wroble* line of cases makes clear that while certain conduct may justify discharge of an employee, it may not justify barring the award of unemployment compensation benefits. Today's reinstatement of the *Mandes* and *Johns* requirement of intentional misconduct should remove the confusion and unfairness that has been produced by the *Matthews* line of cases, and restore the Industrial Commission to its former authoritative status.

THE COMMISSION'S FINDING OF INTENTIONAL MISCONDUCT IS NOT SUPPORTED BY SUBSTANTIAL COMPETENT EVIDENCE

"In its findings of fact and conclusions of law, the Commission characterized Lang's misconduct as both intentional misconduct and as a so-called 'standard of behavior' case within the *Matthews* definition which we today discard. The Commission's order would be readily reversible if it had applied only the *Matthews* definition. But because the order also found intentional misconduct we must examine that portion of the order to see if it is supported by substantial competent evidence in the record.

"The Commission specifically based its decision upon Lang's alleged mistreatment of the clinic's patients in her efforts to collect delinquent accounts. In its written decision, the Commission recited testimony concerning Lang's contacts with the patients and found that she treated them rudely and abrasively, resulting in the loss of some of those patients' business. Regarding her alleged intentional conduct, the Commission made this specific finding:

> Since Claimant's work was satisfactory until the dispute arose concerning her pay, the Commission is persuaded that Claimant's subsequent abrasive actions were wilful and intentional in nature.

R., p. 52. Thus, in order to review this finding we examine the record to see if substantial competent evidence exists to support the Commission's position that Lang intentionally violated, in a wilful and substantial manner, her employer's rules or her obligations to the employer which had previously been made known to her by her employer.

"In the course of our review, the applicable standard is that the Commission's finding of intentional misconduct will be affirmed provided that we see it as supported by substantial competent evidence. We are not obliged to automatically approve any Commission finding no matter what the state of the evidentiary record. Rather our role is to review the record in search of substantial evidence. Our function was recently expressed in *Idaho State Insurance Fund v. Hunnicutt,* 110 Idaho 257, 715 P.2d 927 (1986):

> In *Local 1494 of the International Association of Firefighters v. City of Coeur d'Alene,* 99 Idaho 630, 586 P.2d 1346 (1978), this Court discussed the test for determining substantial evidence for the purposes of judicial review of an administrative agency's action. We observed:
>
> > The 'substantial evidence rule' is said to be a 'middle position' which precludes a *de novo* hearing but which nonetheless requires a serious review which goes beyond the mere ascertainment of procedural regularity. *Id.* at 633, 586 P.2d at 1349.
>
> Such a review requires more than a mere "scintilla" of evidence in support of the agency's determination, *id.* at 634, 586 P.2d at 1350, though "something less than the weight of the evidence." [Citation omitted.]

110 Idaho at 260, 715 P.2d at 930 (emphasis added). Otherwise put, we turn to the record for evidence which demonstrates that Lang intentionally disregarded explicit rules or obligations made known to her by her employer.

"On redirect examination by *his* attorney Dr. Reynolds testified as follows:

Q. [Ms. Munther]: ... Now, Dr. Reynolds, did you ever explain to the Claimant that you did not expect her to collect the accounts at the expense of losing a patient?

A. I think we have, yes.

Q. And you did not expect to improve efficiency at the cost of losing good employees?

A. No.

Tr., 50–51.

"However, on cross examination by *Lang's* attorney he stated that he had not established a specific rule that failure to treat patients courteously could result in termination:

Q. [Ms. Newby]: You said you'd had conversations with her about the way she conducted conversations with patients. Did you ever give her any indication she could be dismissed or, uh, if she did not improve?

A. [Dr. Reynolds]: I don't think, we just came out and said "if you do not improve, you will be fired?" *No. We said we would like to have it improved* because our patients are of value to our office, and we need to maintain them.

Tr., 48 (emphasis added).

"Dr. Reynolds also testified upon cross-examination by Lang's attorney that he personally had known of Ms. Lang's collection procedures all along:

Q. Uh, Dr. Reynolds, are you saying that you were unaware of Ms. Lang's, uh, collection procedures until December of 1986? You had no idea how she was collecting your accounts before then?

A. No. I didn't.

Q. *So you knew all along, basically, her procedures for collecting these accounts.*

A. *Right. She phrased it for me by saying the basic, or general.*

Q. Ok, what didn't you know that she was doing?

A. The last little specific details I did not know, she wrote notes on her own little system of putting notes on statements that I did not know, which is demon's work.

Q. Had she been told that she was not supposed to do this?

A. No. Yes.

Q. She was told she was not supposed to write statements on her reports? She's not supposed to write notes on statements?

A. *She wasn't told that, that she couldn't.*

Q. *She was not told that she couldn't do it?*

A. *No.*

Tr., 147–148 (emphasis added). For her part Lang corroborated Dr. Reynolds' testimony that he knew of her collection procedures and that she had not ever tried to hide anything about those procedures from him, Tr., 137, including the fact that Dr. Reynolds was aware that Lang sometimes called patients at work to discuss their delinquent accounts. Tr., 94.

"Thus, nakedly in support of the Commission's finding VI, that Lang's abrasive contacts with patients with regard to collecting their delinquent accounts was a wilful and intentional breach of her employer's rules, is only the testimony of Dr. Reynolds, above-cited that he *thought* he had told Lang that he did not expect her to collect the accounts at the expense of losing a patient. Tr., 50. Other testimony on this point is either equivocal or contradictory. Such minuscule testimony in support of the Commission's finding falls into the 'scintilla' category described in the standard of review applicable to Commission findings. We conclude that the Commission's determination that Lang *intentionally* violated a known rule or standard established by her employer is not supported by substantial and competent evidence.

"In its findings III and VI the Commission detailed the fact that some patients' business was lost due to the claimant's abrasive personal contacts with the patients. Letters were submitted to the Commission in support of his position, and Dr. Reynolds also testified in detail on the lost patients. While these lost patients and their complaints were perhaps sufficient to support a dismissal of Ms. Lang for cause,

they are not necessarily sufficient to deny her unemployment compensation based on a wilful and intentional violation of an employer's rules. *See Wroble v. Bonners Ferry Ranger Station,* 97 Idaho 900, 902, 556 P.2d 859, 861 (1976) (the intentional misconduct must be substantial in order to justify a bar to unemployment compensation benefits). Thus these findings do not support the Commission's conclusion denying Lang unemployment compensation benefits.

"The final pertinent finding, V, states that Dr. Reynolds asked Lang to write letters of apology to some of the patients who had issued complaints. She drafted these letters and they were reviewed by Dr. Reynolds. Some of the patients found the letters offensive rather than apologetic. But because Dr. Reynolds reviewed them prior to their being sent, the patients reaction to them can hardly be attributed to any fault of Ms. Lang alone. Thus, this finding also does not support the Commission's conclusion.

"Finally, we briefly examine whether the employer carried its burden of proving an intentional misconduct sufficient to deny claimant unemployment compensation benefits. This burden on the employer is mandated by our prior cases. *See Parker v. St. Maries Plywood,* 101 Idaho 415, 419, 614 P.2d 955 (1980). As detailed above, the Commission findings do not support its ultimate conclusion either individually or collectively.

"The Commission's order is reversed and the cause remanded with directions to determine the level of unemployment compensation benefits to which Ms. Lang is entitled. Costs to appellant; no attorney fees on appeal."

Because it is my belief that the above is the correct resolution of this case, I respectfully dissent from the majority opinion.