921 P.2d 743

**Daniel R. CROOKS, Claimant–Respondent,**

v.

**INLAND 465 LIMITED PARTNERSHIP, Employer, Defendant–Appellant,**

and

**Idaho Department of Employment, Defendant.**

No. 22155.

Supreme Court of Idaho,
Lewiston, May 1996 Term.

July 29, 1996.

Randall, Blake & Cox, Lewiston, for appellant.

Alan G. Lance, Attorney General; Evelyn Thomas, Deputy Attorney General, Boise, for Idaho Department of Employment.

Clark & Feeney, Lewiston, for respondent.

SCHROEDER, Justice.

This is an appeal involving eligibility for unemployment benefits pursuant to section 72–1366(f) and (g) of the Idaho Code. The State of Idaho Industrial Commission held that the claimant, Dan Crooks, did not refuse an offer of available suitable employment. The employer, Inland 465, appeals from the decision of the Industrial Commission.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

Daniel R. Crooks (Crooks) was employed by Inland 465 (Inland) as general manager from January 12, 1993, to July 15, 1994. At the time of his separation from Inland, Crooks was paid $6,250.93 per month.

Inland had solicited Crooks to become its general manager, and he had left employment with Potlatch Corporation after thirty-one and a half years. Prior to Crooks' employment, Inland was not profitable; a year after Crooks became general manager, Inland was no longer experiencing losses.

Some of the employees of the company expressed concerns about Crooks to management at Inland. The employees alleged that Crooks had verbally abused them and several of them threatened to quit. Inland placed Crooks on leave with pay.

Subsequently, Inland offered Crooks continued employment as the operations manager instead of general manager. Crooks was to receive the same rate of pay, but as operations manager he would be removed from direct contact with employees and would report to the new general manager. Inland conditioned the transfer to the position of operations manager upon Crooks signing an employment agreement.

The employment agreement proposed by Inland provided Crooks with employment as operations manager for six months at the same salary and benefits he received as gen-

eral manager. Upon the termination of Crooks' employment, the employment agreement provided that Inland had the option "in its sole discretion" to pay a bonus of $25,000. The employment agreement also allowed Inland to terminate Crooks on two-weeks notice and upon any violation of its Personnel Policy Manual "which would allow for termination of employees without prior notice." In addition, the employment agreement contained an "at will" acknowledgement, which stated, "From the date of his initial employment by INLAND until the date of this Agreement, CROOKS' [sic] acknowledges and agrees that he has been an at-will employee of INLAND." In addition, section IV of the Agreement contained a waiver of all of Crooks' potential legal claims against Inland, which read, in pertinent part:

B. In consideration of the continued employment of CROOKS by INLAND pursuant to the terms of this Agreement, CROOKS hereby releases, acquits, and forever quitclaims and discharges INLAND, its officers, directors, agents, partners, employees and attorneys, from any and all actions, causes of action, claims or demands whatsoever, in law or in equity, against said parties, their successors or assigns, that CROOKS ever had, now has, or which his successors or assigns hereafter can, shall, or may, by reason of any matter, cause or thing whatsoever, from the beginning of the world to the date of this Agreement.

After considering the employment agreement, Crooks returned to the place of employment ready to work, but he had not signed the agreement and was not permitted to return to work. Inland offered Crooks additional time to consider the agreement. After further consideration, Crooks said he would sign the agreement if he were guaranteed six months of employment and a bonus at the end of the six months. This proposal was not acceptable to Inland. Crooks refused to sign the tendered employment agreement. Inland terminated Crooks.

Crooks applied for unemployment compensation after his termination. An Eligibility Determination dated September 14, 1994,

found that Crooks was discharged for misconduct in connection with his employment, which is a basis upon which benefits are to be denied under I.C. § 72–1366(e), and that he failed to accept suitable work without good cause in violation of I.C. § 72–1366(f) and (g). Crooks filed a protest which was heard by an appeals examiner from the Department of Employment, Appeals Bureau. The appeals examiner found that Crooks was not discharged for misconduct, but affirmed that Crooks refused an offer of suitable employment without good cause. The appeals examiner denied unemployment benefits, stating that, "the claimant did not have good cause for refusing the offer of new employment by not wanting to sign the employment agreement."

Upon appeal from the decision of the appeals examiner the Commission affirmed the determination that Crooks was discharged, but not for misconduct. The Commission reversed the decision that Crooks was not entitled to unemployment benefits, finding that Crooks did not refuse an offer of available suitable employment.

The Commission agreed with Crooks' assertion that if he had signed the agreement he would have made valuable concessions for what was a guarantee of only two weeks of additional employment. The Commission found that, "[b]y signing Employer's agreement, Claimant would have given up potentially valuable legal rights for an illusory offer of consideration." The Commission concluded that Crooks was not offered suitable employment by Inland. Inland appealed the determination that Crooks was not offered suitable employment.

## II.

### STANDARD OF REVIEW

■ It is well established that this Court exercises free review over the Industrial Commission's legal conclusions, *Laundry v. Franciscan Health Care Center,* 125 Idaho 279, 281, 869 P.2d 1374, 1376 (1994), and that findings of fact will only be disturbed on appeal where they are not supported by substantial, competent evidence. *Wulff v. Sun Valley,* 127 Idaho 71, 74, 896

P.2d 979, 982 (1995); *Dewey v. Merrill,* 124 Idaho 201, 203, 858 P.2d 740, 742 (1993); Idaho Const. art. 5, § 9.

The question of whether a claimant has met the eligibility requirements of I.C. § 72–1366 is a question of fact for the Industrial Commission. *Laundry,* at 281, 869 P.2d at 1376 (citing *Burnside v. Gate City Steel Corp.,* 112 Idaho 1040, 1042, 739 P.2d 339, 341 (1987)). If the Commission's resolution of such questions of fact is supported by substantial, competent evidence on the record it will not be overturned on appeal. *Id.*

## III.

### THE EMPLOYMENT OFFERED TO CROOKS BY INLAND WAS NOT "SUITABLE WORK"

■ Under Idaho's Employment Security Law, "Where one has suitable employment and refuses to work under reasonable regulations and conditions, and pursuant to reasonable directives of management, such person is not entitled to unemployment benefits." *Seymour v. Potlatch Forests, Inc.,* 94 Idaho 224, 225, 486 P.2d 79, 80 (1971). The necessary determination is what constitutes "suitable work" under I.C. § 72–1366(f) and (g).

The relevant provisions read, in pertinent part:

72–1366. **Personal eligibility conditions.**—The personal eligibility conditions of a benefit claimant are that—

. . . .

(f) His unemployment is not due to his failure without good cause to apply for available suitable work or to accept suitable work when offered to him. . . .

(g) In determining for the purposes of this act, whether or not work is suitable for an individual, the degree of risk involved to his health, safety, morals, his physical fitness, experience, training, past earnings, length of unemployment and prospects for obtaining local employment in his customary occupation, the distance of the work from his residence, and other pertinent factors shall be considered. No employment shall, in any event, be deemed suitable and benefits shall not be denied to

any otherwise eligible individual for refusing to accept new work or to hold himself available for work under any of the following conditions:

(1) If the vacancy of the position offered is due directly to a strike, lockout, or other labor dispute;

(2) If the wages, hours, or *other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality of the work offered;*

(3) If, as a condition of being employed, the individual would be required to join a company union or to resign from or refrain from joining any bona fide labor organization.

I.C. § 72–1366(f)–(g) (emphasis added) (Supp.1995).

"Clearly, the key terms in these statutes, for our purposes, are 'good cause' and 'suitable.' These two terms are not necessarily coextensive; a claimant always has good cause to refuse work that is unsuitable, but one may also have good cause to refuse work that is suitable." *Ullrich v. Thorpe Elec.,* 109 Idaho 820, 822, 712 P.2d 521, 523 (1985) (citing *Meyer v. Skyline Mobile Homes,* 99 Idaho 754, 589 P.2d 89 (1979)).

In *O'Dell v. J.R. Simplot Co.,* 112 Idaho 870, 736 P.2d 1324 (1987), this Court set forth a two-part analysis for the eligibility requirements of I.C. § 72–1366(f). It must be determined whether the work refused by a claimant is "suitable work" and, if so whether the claimant had "good cause" to refuse to accept such work. 112 Idaho at 873, 736 P.2d at 1327. The Industrial Commission concluded that the position of operations manager offered to Crooks was not suitable work. Therefore, good cause was not needed to refuse the offer.

In *Meyer v. Skyline Mobile Homes,* this Court interpreted the suitability requirement of I.C. § 72–1366(g)(2) and stated that the "statutory basis for establishing the unsuitability of an offer of work requires a comparison between the terms of the work offered and the terms prevailing for similar work in the area in which work is offered." 99 Idaho at 757, 589 P.2d at 92. The Commission was correct in noting that the employment agreement which was a condition of Crooks' continued employment with Inland included a substantial waiver of legal rights. The likelihood of success on a claim for wrongful termination is irrelevant to the unemployment eligibility at issue in this case. The fact remains that the proffered employment agreement would have vitiated any claims Crooks may have had against Inland. The waiver of rights contained in the employment agreement constituted a condition of the work offered which was "substantially less favorable to the individual than those prevailing for similar work in the locality of the work offered." I.C. § 72–1366(g)(2). Nothing in the record indicates that operations managers in the same field are also subject to such a waiver of rights as a condition of employment. The Industrial Commission's conclusion that the operations manager position offered to Crooks by Inland was not "suitable work" is based on substantial, competent evidence and will not be disturbed on appeal.

## IV.

### CONCLUSION

The decision of the Industrial Commission is affirmed. Crooks is allowed costs on appeal. No attorney fees are awarded.

McDEVITT, C.J., and JOHNSON, TROUT and SILAK, JJ., concur.