922 P.2d 389

Carol M. QUALMAN, Claimant–
Appellant,

v.

STATE of Idaho, DEPARTMENT OF
EMPLOYMENT, Defendant–
Respondent.

No. 22226.

Supreme Court of Idaho,
Boise, March 1996 Term.

Aug. 2, 1996.

Carol M. Qualman, pro se.

Alan G. Lance, Attorney General; Evelyn Thomas, Deputy Attorney General, Boise, for respondent.

McDEVITT, Chief Justice.

This is a case involving the denial of unemployment insurance benefits, based upon the Industrial Commission's (Commission) finding that the claimant failed, without good cause, to accept an offer of suitable employment. We reverse the finding of the Commission that Qualman received an offer of employment and hold that Qualman is eligible for unemployment insurance benefits.

## I.

### FACTS AND PRIOR PROCEEDINGS

The appellant, Carol M. Qualman (Qualman), moved to the Canyon County area after her employment with the St. Maries Joint School District ended on June 10, 1994, due to the elimination of her position as a school social worker.[1] Qualman had been employed by the St. Maries Joint School District as a school social worker from August 1988 to June 10, 1994. Qualman moved to the Canyon County area to increase her employment opportunities in social work or related fields in the school system.

Qualman applied for a position with the Glenns Ferry School District (school district) on September 23, 1994. On September 29, 1994, Qualman was interviewed by a school district principal, Mr. Cline, for an elementary school counselor position. During the interview, Cline informed Qualman that the school counselor position would involve a lot of classroom time. Qualman informed Cline that she had not been in a classroom setting much and had spent most of her counseling with individual and family groups.

On October 10, 1994, Cline called Qualman and offered Qualman a school counselor position at the rate of $25,110 per year. Cline told Qualman the position needed to be filled by October 15, 1994, or the school district would not receive funding for the school counselor position. Qualman informed Cline

that Qualman had been receiving $30,000 per year in her previous position in St. Maries, she would like to earn at least $30,000 per year, and she reminded Cline that she had completed six years of work with the St. Maries School District as a school social worker, and had previously worked five years as a social worker for the Idaho Department of Health and Welfare. Cline called Qualman again on October 11, 1994, and informed Qualman that he could not offer Qualman more than $25,110 for the school counselor position. Qualman did not accept Cline's offer. Qualman had been receiving unemployment insurance benefits for fifteen weeks when she declined Cline's employment offer.

On her Idaho Continued Claim Report, for the first week ending October 8, 1994, and the second week ending October 15, 1994, Qualman informed the Idaho Department of Employment that she refused work on October 11, 1994. Qualman's handwritten explanation for refusing work stated:

October 11, 1994, Glenns Ferry School District offered me a job for about $25,000. I had worked before and earned about $30,000 and would have earned more this year. I asked to be paid for my education and experience but the District refused to pay me at least $30,000 a year which I am worth receiving for my work abilities and years of work experience.

On October 19, 1994, Qualman completed an unemployment insurance interview, explaining the circumstances of Qualman's rejection of Cline's offer of employment. Qualman stated that based upon her education and years of experience, her services were worth at least $30,000. Qualman also noted that the school counselor position would have required her to relocate out of the area she was currently living in.

On October 26, 1994, Qualman was deemed ineligible for unemployment insurance benefits, effective October 2, 1994. Qualman was determined ineligible for unemployment insurance benefits based upon the Department of Employment's finding that Qualman had

---

1. Qualman's employment contract ended in August 1994.

failed, without good cause, to accept available, suitable work. On November 9, 1994, the Department of Employment received Qualman's "Notice: Protest, Expressing My Negative Assent" (Notice), requesting the Department of Employment to redetermine its denial of unemployment insurance benefits. Qualman's challenge to the October 26, 1994 determination, was based upon the amount of salary offered, the requirement that she relocate in a short period of time, and that the job offer was outside her qualifications.

A hearing before an appeals examiner was held on December 14, 1994. During the hearing Qualman stated that she refused the school counselor position based upon the salary being $5,000 less than what she would have been making in her previous job in St. Maries and the short period of time Qualman would have had to relocate to the Glenns Ferry area and start her job.[2]

The appeals examiner issued her determination on December 30, 1994, finding Qualman had failed to accept an offer of suitable employment. The appeals examiner affirmed the Department of Employment's October 26, 1994 determination, except she denied benefits effective as of October 9, 1994, rather than on October 2, 1994.[3]

Qualman appealed the appeals examiner's decision to the Commission. On May 25, 1995, the Commission issued a Decision and Order affirming the appeals examiner's December 30, 1994 decision, and January 19, 1995 Erratum. The Commission adopted the appeals examiner's findings of fact[4] and determined that Qualman had been offered suitable employment and failed to accept such employment. The Commission concluded that,

> [a]lthough the salary offered by Cline might have made the offer unsuitable at the inception of Claimant's unemployment, we find that after fifteen weeks of unemployment, Claimant must temper the conditions and limitations she has imposed on herself. We find that the salary restriction imposed by Claimant was not reasonable in view of the length of her unemployment at the time Cline offered her the position. Therefore, we find that the work offered Claimant was suitable. Thus, we conclude that Claimant refused an offer of suitable employment, and is ineligible for unemployment insurance benefits.

Although the claimant contended that she refused the school counselor position because of the short notice, cost of moving, the type of work, the low salary, and temporary nature of the position, the Commission found that Qualman's "principle objection to the offer was the salary." The Commission relied upon the fact that Qualman "knew prior to applying for the position the start date, the distance from Nampa, and the work the

---

2. Qualman would not have known whether she got the job until after the school board approved her for the school counselor position, during the evening of October 12, 1994. Since the position she was offered had to be filled by October 15, 1994, Qualman argued there was an insufficient amount of time to relocate and start a new job.

3. Qualman stated in her Notice that she mistakenly checked the week ending October 8, 1994 on her Idaho Continuing Claim Report, when she reported her refusal of the school counselor position. The appeals examiner corrected this error in the Erratum.

4. The appeals examiner made the following findings of fact:

    1. The claimant moved to the Canyon County area from St. Maries, Idaho, because of better employment opportunities. The claimant had been employed by the St. Maries School District as a school social worker from 1988 to June 10, 1994.

2. The claimant applied for a position through the Glens Ferry School District [sic]. The claimant interviewed with Mr. Cline, a school principal on September 29, 1994, for an elementary school counselor position.

3. On October 10, 1994, Mr. Cline called the claimant and offered the claimant the school counselor position at the rate of $25,110 per year with the option that the position could be renewable at the end of the school term.

4. The claimant informed Mr. Cline that she had been receiving $30,000 per year in her previous position. Mr. Cline told the claimant that the position needed to be filled by October 15, or the district would not receive their funding for that position. The claimant did not accept the offer of employment because the decrease in salary and the short notice that would be required for her to relocate to the Glenns Ferry area.

position encompassed." The Commission found that it was reasonable, in view of Qualman's length of unemployment, to find that the salary for the school counselor position was suitable for Qualman, and thus concluded that Qualman had "refused an offer of suitable employment, and [was] ineligible for unemployment insurance benefits."[5] Qualman appealed the Commission's decision to this Court.

## II.

## STANDARD OF REVIEW

When reviewing a decision of the Commission, this Court will not disturb the factual findings if they are supported by substantial and competent evidence. *Laundry v. Franciscan Health Care Ctr.*, 125 Idaho 279, 281, 869 P.2d 1374, 1376 (1994). Substantial and competent evidence consists of relevant evidence a reasonable mind might accept as adequate to support a conclusion. *Id.* This Court exercises free review over questions of law. *Id.;* Idaho Const. art V, § 9.

The question of whether a claimant has satisfied the statutory eligibility requirements for unemployment insurance benefits is a question of fact. *Clay v. BMC West Truss Plant,* 127 Idaho 501, 503, 903 P.2d 90, 92 (1995); *Burnside v. Gate City Steel Corp.,* 112 Idaho 1040, 1042, 739 P.2d 339, 341 (1987). The claimant bears the burden of showing all of the eligibility requirements have been satisfied. *Burnside,* 112 Idaho at 1042, 739 P.2d at 341; *Owen v. Newberg Cedar,* 101 Idaho 77, 78–79, 609 P.2d 144, 145–46 (1980) (holding that claimant has burden of establishing that the offered employment was not suitable work); *Howard v. Department of Employment,* 100 Idaho 314, 316, 597 P.2d 37, 39 (1979) ("It is well settled that the burden of proving and establishing statutory eligibility for unemployment benefits rests with a claimant."). In *Burnside* this Court noted that "[n]o hard or fast rule definitive of elements of proof of those re-

quirements of benefit eligibility 'should be or perhaps could be adopted; it must depend, at least in part, upon the particular facts and circumstances as developed in each case.'" *Burnside,* 112 Idaho at 1042, 739 P.2d at 341 (quoting *Hudson v. Hecla Mining Co.,* 86 Idaho 447, 452, 387 P.2d 893, 896 (1963)).

## III.

## QUALMAN DID NOT RECEIVE AN OFFER OF SUITABLE EMPLOYMENT

Idaho Code § 72–1366 sets forth the personal eligibility conditions of a benefit claimant. The claimant must show that her "unemployment is not due to [her] failure without good cause to apply for available suitable work or to accept suitable work when offered to [her]." I.C. § 72–1366(f).

Qualman argues that she was not specifically offered the school counselor position and thus she could not have refused suitable employment, pursuant to the holding in *Tackett v. Continental College of Beauty,* 96 Idaho 634, 534 P.2d 464 (1975), and *Laundry.* We agree.

In *Laundry,* we recognized that I.C. § 72–1366(f) requires a "'specific offer of employment to be tendered to a prospective employee before it can be concluded that there has been a failure by the employee to accept suitable work when offered.'" *Laundry,* 125 Idaho at 282, 869 P.2d at 1377 (quoting *Tackett,* 96 Idaho at 635, 534 P.2d at 465). In *Tackett,* this Court concluded that, based upon the fact that the claimant had not received an offer of employment, the claimant had not refused an offer of suitable employment and was eligible for unemployment insurance benefits. *Tackett,* 96 Idaho at 635–36, 534 P.2d at 465–66.

In the present case, we hold that Qualman did not receive an offer of employment. Section 33–513 of the Idaho Code grants the board of trustees of each school district the power and duty to employ professional personnel. Cline, who proposed the position of

---

5. Although the Commission noted that in order to become eligible for unemployment insurance benefits, the unemployment must not be due to a claimant's failure, without good cause, to accept

suitable work when offered, the Commission did not separately analyze whether Qualman failed to accept suitable employment with good cause.

school counselor on behalf of the school district, did not have the authority to offer Qualman employment. It is undisputed that if Qualman accepted the terms of the position proposed by Cline, the school board still had to approve Qualman for the position.

Whether the school board would have approved Qualman for the position was never decided based upon Qualman's insistence that she was worth $30,000 when Cline made the proposal of employment for $25,110. After discussing it with school district officials, Cline called Qualman again, and informed her that the school district could not offer more than $25,110. After Qualman continued to insist she was worth at least $30,00, Cline concluded he would pursue another option and the conversation was concluded. Qualman never received an offer of employment.

### IV.

### QUALMAN EXERCISED GOOD FAITH IN ATTEMPTING TO CULTIVATE A JOB OPPORTUNITY

■ While *Tackett* would appear to dispose of the present case in favor of Qualman qualifying for unemployment insurance benefits, the Court's analysis must continue pursuant to this Court's holding in *Czarlinsky v. Employment Sec. Agency*, 87 Idaho 65, 390 P.2d 822 (1964).

In *Czarlinsky*, the Court considered whether a claimant was eligible for unemployment insurance benefits given the claimant never received an offer of employment. The *Czarlinsky* Court considered whether a claimant was eligible for unemployment insurance benefits after she "gave her prospective employer the impression that she would not have accepted a job even if it had been offered." *Czarlinsky*, 87 Idaho at 69, 390 P.2d at 824.

In *Czarlinsky* the Industrial Accident Board found that the claimant, "initiated the breakdown in the job interview." The Industrial Accident Board concluded that the claimant would be held responsible for the employer's failure to consider her further for the job, in the same manner as if the claimant had simply refused to apply for the position. *Czarlinsky*, 87 Idaho at 68, 390 P.2d at 823.

On appeal, the *Czarlinsky* Court affirmed the Industrial Accident Board's decision. *Czarlinsky*, 87 Idaho at 72, 390 P.2d at 826. The *Czarlinsky* Court held that, despite the fact that the claimant did not receive an offer of employment, the claimant was not entitled to unemployment insurance benefits since the claimant failed to make a reasonable, good faith effort to secure employment. *Czarlinsky*, 87 Idaho at 70–72, 390 P.2d at 824–26.

The claimant's testimony in *Czarlinsky* regarding her job interview was as follows:

Well, after making out my application, he asked, of course, about my sales experience and all which was shown on the application. And then he told me, of course what the work consisted of—that it was in the cosmetic department. And then he went on to relate that the hours would be nine till six one week; twelve to nine the following week. And then I told him that I preferred not working nights. And he asked the reason why and I told him it was because I had a home and I had a dog that had to have care for it, and I didn't care to be out after night hours, that I hadn't worked night hours and I preferred not working nights if I could possibly find something that—that I didn't have to.

Q But did you ever, at any course in the interview, say that you would *not* work nights?

A No.

Q You did not. You said you *preferred* not working nights?

A That's right.

Q And what occurred after you made this statement?

A Well he said that that would close our conversation; that he had to have someone that would work nights.

*Czarlinsky*, 87 Idaho at 68, 390 P.2d at 823. The claimant further testified that the employer informed her that he had two other applicants who could fill the position. *Czarlinsky*, 87 Idaho at 69, 390 P.2d at 824.

The *Czarlinsky* Court concluded the evidence supported the Industrial Accident Board's finding that the claimant initiated the breakdown of her application for work such that the claimant would be deemed to have refused to apply for the position. *Czarlinsky*, 87 Idaho at 72, 390 P.2d at 826. The *Czarlinsky* Court held that since the claimant failed to apply for suitable employment, she was not eligible for unemployment insurance benefits. *Id.* The claimant's desire not to work nights did not constitute good cause for refusing to make a reasonable effort to secure employment. *Czarlinsky*, 87 Idaho at 70, 390 P.2d at 824.

The *Czarlinsky* Court rejected the claimant's contention that she applied for suitable work and that the position was not offered to her, making her eligible for benefits. *Czarlinsky*, 87 Idaho at 70, 390 P.2d at 824. The Court stated that "[i]f claimant had actually been offered the job for which she was interviewing and had subsequently refused the offer, there would be no doubt of her ineligibility for unemployment benefits. She would have refused an offer of suitable employment." *Czarlinsky*, 87 Idaho at 70, 390 P.2d at 824. The *Czarlinsky* Court held the purpose of Idaho's Employment Security Act was instructive:

> It is to be remembered, however, that the Employment Security Act is designed to alleviate economic insecurity and to relieve hardships resulting from involuntary unemployment. It was intended to provide benefits for those unemployed under prescribed conditions who are willing and able to work but unable to secure suitable employment on the labor market. *It would be a frustration of legislative intent to allow benefits to a claimant who fails to make a reasonable effort to secure employment.* We have held in a similar context that the element of good faith is an essential ingredient of good cause. *It is essential that a claimant who is being interviewed for possible employment must evidence good faith in attempting to cultivate the job opportunity.*

*Czarlinsky*, 87 Idaho at 70, 390 P.2d at 824–25 (emphasis added) (citations omitted).

Applying the holding in *Czarlinsky* to the facts of this case, we must determine whether during the interviewing stage, Qualman acted in good faith in attempting to cultivate the Glenns Ferry school counselor job opportunity. In *Czarlinsky*, the Court held that a claimant's statement that she "preferred not working nights" and the employer's response to terminate their conversation since he had two other applicants for the position, did not constitute good cause for discouraging an offer of employment. In the present case, Qualman informed Cline, once Cline proposed the school counselor position for $25,110, that she wanted at least $30,000 for the position. Cline responded that he would check with school district officials and get back to Qualman. Cline later called Qualman and informed her that the school district could not pay her over $25,110 for the position. After Qualman continued to insist she was worth at least $30,000, Cline stated that he had an alternate plan in mind and the conversation ended.

We hold that Qualman's request for $30,000 was in good faith and did not rise to the level in *Czarlinsky* where this Court held that the claimant had failed to make a reasonable effort to secure employment. Qualman has evidenced good faith in attempting to cultivate the school counselor position. Qualman was trying to negotiate a higher salary based upon her education and experience when Cline terminated the conversation.

We conclude that there is no substantial and competent evidence to support the Commission's finding that Qualman refused an offer of suitable employment. Qualman is eligible for unemployment insurance benefits.

## V.

## CONCLUSION

The Commission's decision denying Qualman unemployment insurance benefits is reversed and this case is remanded for action consistent with this opinion. Costs to the appellant.

JOHNSON and SILAK, JJ., concur.

TROUT, Justice, dissenting.

As the Court correctly asserts, the question here is not really whether Cline had

the authority to offer Qualman the school counselor position but rather whether the claimant demonstrated a good faith effort to cultivate a suitable job opportunity. The Commission concluded that the school counselor position was suitable for the claimant, even though the salary was lower than her expectations, and that her refusal to take the position rendered her ineligible for benefits. The Court holds, however, that Qualman's "request" for a higher salary was a good faith effort to cultivate the proffered position and that she was merely trying to negotiate with Cline when he terminated the conversation. This is simply the Court's own interpretation of the record. On the contrary, an equally reasonable interpretation of the record is that Qualman made her salary demands known and when Cline advised her the district could not meet those demands, she refused employment at the lower salary.

On the Idaho Continued Claim Report Qualman completed in October she checked the box stating that she had refused work. Qualman gave, as her reason for that refusal, that the School District would not pay her at least $30,000 a year. In her testimony before the hearing officer, Qualman made the following statement:

Q. [by the hearing officer] Okay. So, then on the October 11th, when he told you that the salary was twenty-five one one zero,

. . .

A. [Qualman] Uh huh.

Q . . . . did you tell him that you could not take it if it didn't pay 30,000?

A. I told him I needed at least 30,000 . . .

I therefore fail to see, under the facts presented, how Qualman's situation can be distinguished in any meaningful sense from that of the claimant in *Czarlinsky.* If anything, Qualman's actions were less ambiguous than those of the claimant in *Czarlinsky* who only told the employer she "preferred" not working nights when the breakdown in the application process occurred. Qualman specifically refused to work for less than the $30,000 per year to which she felt she was entitled.

Thus whether Qualman refused an actual offer of employment or simply rejected Cline's overtures, there is substantial competent evidence that some type of offer was made which Qualman refused; and there would be no purpose served at that point in seeking school board approval. Likewise, the Commission's finding that "the salary restriction imposed by [Qualman] was not reasonable" is also supported by substantial and competent evidence. Contrary to the Court's conclusion, once Qualman was advised that her salary requirements could not be met, her refusal to thenceforth be considered for the school counselor position does not evidence good faith.

As the Court notes, determining whether a claimant has satisfied the eligibility requirements for unemployment benefits is a question of fact. *Clay,* 127 Idaho at 503, 903 P.2d at 92. This Court should always defer to the Commission in its factual interpretations when there is substantial and competent evidence to support those findings. *Pomerinke v. Excel Trucking Transp.,* 124 Idaho 301, 305, 859 P.2d 337, 341 (1993) (citing Idaho Const. art. 5, § 9; I.C. § 72–732). Accordingly, this Court should affirm the Commission's order finding Qualman ineligible for unemployment compensation benefits.

SCHROEDER, J., joins in Justice TROUT'S dissent.