IN THE SUPREME COURT OF THE STATE OF IDAHO

**Docket No. 34526**

|  |  |  |
|---|---|---|
| RAYMAJEAN HENDERSON, | ) | |
| | ) | |
| Claimant-Appellant, | ) | |
| | ) | |
| v. | ) | **Coeur d'Alene, April 2009 Term** |
| | ) | |
| ECLIPSE TRAFFIC CONTROL AND | ) | **2009 Opinion No. 80** |
| FLAGGING, INC., Employer, IDAHO | ) | |
| DEPARTMENT OF COMMERCE AND | ) | **Filed:  June 5, 2009** |
| LABOR, | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| Respondents. | ) | |
| | ) | |
| _____ | ) | |

Appeal from the Industrial Commission of the State of Idaho.

The order of the Industrial Commission is reversed.

Starr Kelso, Coeur d'Alene, for appellant.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondents.  Tracey K. Rolfsen argued.

_____

J. JONES, Justice

Raymajean Henderson appeals the Industrial Commission's decision upholding retroactive denials of her claims for unemployment insurance benefits.  We reverse.

**I.**

Raymajean Henderson worked on a seasonal basis as a road construction foreman for Eclipse Traffic Control & Flagging, Inc. (Eclipse).  Henderson worked for Eclipse throughout most of the year, but was laid off each winter due to lack of work.  During the seasonal layoffs, Henderson typically filed claims for, and received, unemployment insurance benefits.  Of importance to this appeal are Henderson's benefit claims for the winters of 2004-05 and 2005-06.

On November 16, 2004, after being laid off for the winter, Henderson filed a claim for unemployment insurance benefits, which became effective on November 14, 2004.  She disclosed

that Eclipse had laid her off due to lack of work during the off-season but had committed to rehiring her when the weather improved. Thus, the Idaho Department of Labor (Department) classified Henderson as "job attached"[1] and required that she maintain weekly contact with Eclipse in order to fulfill her work-seeking requirements.

Less than one month after being awarded benefits, Henderson and her husband moved to a residence they owned in Kailua Kona, Hawaii. While there, Henderson continued collecting unemployment insurance benefits. She filed weekly claim reports from December 12, 2004 to February 26, 2005 and received weekly benefit checks in the amount of $227.00. In her claim reports, Henderson indicated that she was not living outside of her local labor market area. Yet, at the time, Henderson was living in Hawaii and had changed her residence address on file with the Department to her residence in Hawaii.

Henderson lived in Hawaii for most of the winter. In February 2005, however, she returned to Idaho and changed her address on file with the Department back to her Idaho address. In March, Henderson resumed working for Eclipse. She remained employed there until June 2005, at which point she began working for Aapex Construction, Inc. (Aapex). Like her employment at Eclipse, Henderson's position at Aapex was seasonal.

Aapex laid Henderson off the following winter. On November 14, 2005, Henderson filed a claim for unemployment insurance benefits, which became effective on November 13, 2005. Once again, the Department classified Henderson as a job attached employee and required her to maintain weekly contact with Aapex to fulfill her work-seeing requirements.

On December 12, 2005, Henderson moved to her residence in Hawaii. Just like the previous winter, she continued to collect unemployment insurance benefits while living there. Henderson filed claim reports for the weeks ending on December 10, 2005 through April 1, 2006 and received weekly benefit checks in the amount of $325.00. Although she changed her residence address on file with the Department to her home in Hawaii and spent the entire winter there, Henderson continued to indicate on her weekly claim forms that she was not away from the area in which she normally worked.

_____

[1] Henderson's job attachment classification pertains to claimants "who have a firm attachment to an employer, industry or union, or who are temporarily or seasonal unemployed, and expect to return to their former jobs or employers in a reasonable length of time." IDAPA 09.01.30.575.04.a.

Henderson returned to Idaho in April 2006 and resumed working for Aapex. Once back in Idaho, she changed her residence address on file with the Department back to her Idaho address. Nearly one year later, on February 13, 2007, Henderson called the Department to inquire about a tax form she had not received for her 2006 benefits. A Department employee, Shirley Ackerman, informed Henderson that the form had been mailed to her Hawaii address. Upon noticing Henderson's Hawaii address, Ackerman became suspicious of Henderson's eligibility and decided to conduct an investigation. Based on her investigation, Ackerman concluded that Henderson was ineligible for some of the previously awarded benefits because, while she was living in Hawaii, she was away "from the area where she normally works . . . [and] therefore was not available for work." Consequently, Ackerman determined that Henderson "will be denied [benefits for] the weeks effective her change of address . . . and continuing until she returned to Idaho and changed her address again."

On March 30, 2007, the Department issued two eligibility determinations regarding Henderson's eligibility for benefits during the winters of 2004-05 and 2005-06. According to the determinations, Henderson was not eligible for benefits from December 12, 2004 to February 26, 2005 and December 4, 2005 to April 1, 2006 because she was out of the area in which she normally works during those periods and, thus, was not available for work. The Department subsequently issued a determination of overpayment, demanding Henderson repay the benefits she received while living in Hawaii.

Henderson appealed the eligibility determinations to an appeals examiner, who affirmed the Department's determinations. The appeals examiner reasoned that Henderson was not "available for suitable work" while living in Hawaii because she was outside of her local labor market. Consequently, he concluded that the benefits Henderson received for the periods she was in Hawaii were overpayments. Although the examiner acknowledged that the overpayments were "not the result of a false statement or misrepresentation made by [Henderson]," he ordered her to repay the overpayments because they were not solely the result of Departmental error.

Henderson then appealed the appeals examiner's determination to the Commission, which affirmed the decision after conducting a *de novo* review of the record. Based on the appeals examiner's findings of fact and some of its own additional findings, the Commission concluded that Henderson was not eligible for benefits during the periods she was in Hawaii. Relying on a case from California, the Commission reasoned that "when [Henderson] left Idaho, she essentially

took a 'temporary vacation' from the Idaho labor market." *See In re Gosha*, Precedent Benefit Decision No. P-B-260 (Cal. 1976). Because Henderson moved to a location "in which there [was] no available employment" and she had "no reasonable expectation of finding any," she voluntarily "rendered herself unavailable for work." The Commission concluded Henderson was obligated to repay the benefits she received while residing in Hawaii.

After the Commission denied Henderson's motion for reconsideration, she appealed to this Court. On appeal, Henderson challenges the Commission's conclusion that she was ineligible for benefits during the periods she was in Hawaii. Initially, she asserts that the Department lacked jurisdiction to reconsider her eligibility for those periods. Alternatively, she contends that even if the Department had jurisdiction, it erred in concluding she was unavailable for work. In making this argument, Henderson challenges the validity of the Department's regulation defining "availability." Finally, Henderson argues that, even if she was ineligible for benefits while living in Hawaii, she should not be required to repay the overpayments.

**II.**

On appeal we are presented with five issues, namely: whether (1) the Department lacked jurisdiction to reconsider Henderson's eligibility for unemployment insurance benefits; (2) the Department's regulation defining the availability requirement for job attached claimants exceeds the Department's statutory authority; (3) the Commission's finding that Henderson was ineligible for unemployment insurance benefits was supported by substantial and competent evidence; (4) the Commission erred in concluding that Henderson was required to repay the overpayments; and (5) Henderson is entitled to attorney fees and costs on appeal.

**A.**

On appeal from an Industrial Commission decision, this Court's review is limited to questions of law. IDAHO CONST. art. V, § 9; *see also Pimley v. Best Values, Inc.*, 132 Idaho 432, 434, 974 P.2d 78, 80 (1999). Such questions are subject to free review. *Ewins v. Allied Sec.*, 138 Idaho 343, 346, 63 P.3d 469, 472 (2003). Conversely, the Commission's factual findings will be upheld so long as they are not clearly erroneous. *See Oxley v. Med. Rock Specialties, Inc.*, 139 Idaho 476, 479, 80 P.3d 1077, 1080 (2003). Factual findings will not be regarded as clearly erroneous if they are supported by substantial and competent evidence. *See Pimley*, 132 Idaho at 434, 974 P.2d at 80. "Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion." *Uhl v. Ballard Med. Prods., Inc.*, 138 Idaho 653, 657,

67 P.3d 1265, 1269 (2003). In determining whether substantial and competent evidence exists, we will "not re-weigh the evidence or consider whether we would have reached a different conclusion from the evidence presented." *Id.* Rather, it is up to the Commission to weigh the conflicting evidence and "determine the credit and the weight to be given the testimony admitted." *Bullard v. Sun Valley Aviation, Inc.*, 128 Idaho 430, 432, 914 P.2d 564, 566 (1996). Moreover, when reviewing one of the Commission's decisions, this Court "views all . . . facts and inferences in the light most favorable to the party who prevailed before the Commission." *Oxley*, 139 Idaho at 479, 80 P.3d at 1080 (quoting *Boley v. State Indus. Special Indem. Fund,* 130 Idaho 278, 280, 939 P.2d 854, 856 (1997)).

Whether an unemployment compensation claimant has satisfied statutory eligibility requirements is an issue of fact. *Burnside v. Gate City Steel Corp*., 112 Idaho 1040, 1042, 739 P.2d 339, 341 (1987). Thus, an eligibility determination will be upheld if it is supported by substantial and competent evidence. *Id.* The claimant carries the burden of proving that all eligibility requirements have been met. *Qualman v. State Dep't of Employment*, 129 Idaho 92, 95, 922 P.2d 389, 392 (1996).

**B.**

Henderson argues that the Department did not have jurisdiction on March 30, 2007 to retroactively reverse her awards of unemployment insurance benefits for the periods of December 12, 2004 to February 26, 2005 and December 4, 2005 to April 1, 2006.[2] Citing I.C. § 72-1368(3), Henderson asserts that the initial eligibility determinations made in December 2004 and December 2005 became final and binding on the Department because they were not appealed within 14 days. She further contends that by virtue of the limitations period in I.C. § 72-1368(4) the Department lost jurisdiction to redetermine the awards one year after those initial eligibility determinations became final. Henderson did not raise her jurisdictional challenge before the Commission.

The Department counters that it retained jurisdiction to reconsider Henderson's eligibility because eligibility determinations are "not a one-time affair." It contends that an initial eligibility determination merely addresses whether a benefit year exists and whether disqualification should be assessed. Since a decision regarding Henderson's availability for work could not be made when

---

[2] Although Henderson started receiving unemployment insurance benefits in November of each year, the Department only made the determination of ineligibility with respect to benefits she received after moving to Hawaii each year.

she initially filed her claim for benefits, the Department argues that it retained jurisdiction to make such a determination at a later date. Moreover, the Department asserts it was free to issue the two rulings because it had not previously issued an eligibility determination regarding Henderson's availability for work during the periods in question.

As a general rule, this Court will not consider issues raised for the first time on appeal. *Luskin v. Dep't of Employment*, 100 Idaho 584, 586, 602 P.2d 947, 949 (1979). "However, an exception exists where the jurisdiction of the tribunal to hear the cause is raised." *Id.* Issues of jurisdiction are considered fundamental and "cannot be ignored when brought to our attention." *Dunlap v. Cassia Mem'l Hosp. Med. Ctr.*, 134 Idaho 233, 235, 999 P.2d 888, 890 (2000). Questions of jurisdiction, even those not raised below, "should be addressed prior to considering the merits of an appeal." *Id.* Thus, we will consider Henderson's jurisdictional challenge prior to considering the merits of her appeal.

Administrative agencies are "creature[s] of statute" and, therefore, are "limited to the power and authority granted [them] by the Legislature." *Welch v. Del Monte Corp.*, 128 Idaho 513, 514, 915 P.2d 1371, 1372 (1996). Because the Department is an administrative agency, it "exercises limited jurisdiction, and nothing is presumed in favor of its jurisdiction." *Id.*; *see also Dep't of Employment v. St. Alphonsus Hosp.*, 96 Idaho 470, 472, 531 P.2d 232, 234 (1975). Idaho Code section 72-1368 sets out the procedure for consideration and determination of claims for unemployment insurance benefits. This section provides jurisdiction for the Department's administrative proceedings, as well as for review of those proceedings by the Industrial Commission and for further appeal to this Court. With this jurisdictional foundation in mind, we turn to consideration of Henderson's jurisdictional contentions.

Henderson first argues that the Department is bound by its initial determinations made in December 2004 and December 2005, that she was eligible for unemployment insurance benefits, because those determinations were not appealed within 14 days as provided in I.C. § 72-1368(3). This argument is without merit. While an eligibility determination becomes final as to the claimant and his or her employer, if not appealed within the 14-day period, it does not become conclusive as to the Department. Since the Department does not play an adversarial role in the proceedings it conducts and it typically has no information to act upon other than that provided by the claimant and his or her employer, it would hardly comport with concepts of due process and fair play to preclude the Department from revising a decision based on new information that comes to light.

6

Indeed, the Legislature has made provision for just such a circumstance by allowing the Department to make a redetermination when new information becomes available. *See* I.C. § 72-1368(4).

The initial processing of a claim for unemployment insurance benefits is handled by the Department, which plays no adversarial role in its own proceedings.[3] The Department, acting through its claims examiner and, in the event of an appeal, its appeals examiner, performs as an impartial tribunal in considering and determining unemployment insurance claims. I.C. § 72-1368(3) calls for the claims examiner, acting on behalf of the Department, to consider the claim and make factual findings. The appeals examiner considers evidence presented by the interested parties and makes findings of fact and conclusions of law. I.C. § 72-1368(6). At neither stage does the Department perform in other than a decision-making role. Where the Department plays no adversarial role in these initial proceedings, it makes little sense to contend that a decision is final and binding on the Department unless it appeals. It seems rather unlikely that the Department would appeal its own decision.

The expedited nature of these proceedings must also be considered. Because of the need to speed remedial relief to workers who lose their jobs, the Legislature has provided an expedited procedure for processing unemployment benefits claims. I.C. § 72-1368(12) specifically exempts such proceedings from the contested case and judicial review provisions of the Idaho Administrative Procedure Act, ch. 52, title 67, Idaho Code (IDAPA). The Department has adopted its own procedure recognizing that such "proceedings must be speedy and simple," in order to comply with federal and state law. IDAPA 09.01.06.008.01. As such, the Department has little means of providing informational input into the proceedings. The Department obtains the claim from the claimant and solicits the response of the employer, but typically does not provide its own input into the proceedings, instead relying on information provided by the claimant and employer, who in some cases are adversaries and in other cases are acting in concert. In recognition that the proceedings are designed to be simple so to provide expedited relief, exhaustive findings are not required. If, based on his or her factual findings, the claims examiner concludes that a claimant is eligible for benefits, he or she must determine "the date his benefit year begins, the weekly benefit

---

[3] Only when the claimant or employer seeks review of a Department decision by the Industrial Commission does the Department assume an adversarial role – to defend its decision.

amount, the total benefit amount, the base period wages, and the base period covered employers."[4] I.C. § 72-1368(3). Such an initial eligibility determination "is preliminary and determines only whether a benefit year is established and whether or not disqualification should be assessed at that time" – it "is not a final adjudication of the right to unemployment benefits." *Talley v. Unemployment Comp. Div. of Indus. Accident Bd.*, 63 Idaho 644, 648-49, 124 P.2d 784, 785 (1942). In other words, eligibility is generally not litigated unless questions are raised from the information presented or unless the issue is contested by the employer.

Furthermore, I.C. § 72-1368 specifically provides the Department authority to redetermine eligibility for unemployment insurance benefits. Eligibility redeterminations may be made under two circumstances. *See* I.C. § 72-1368(3) & (4). First, claims examiners may issue redeterminations upon their own motion if the initial determination has not become final. I.C. § 72-1368(3). A determination becomes final if an appeal has not been filed by an interested party within fourteen days of the notice of decision being mailed. *Id.* More importantly, the director of the Department:

> may make a special redetermination whenever he finds that a departmental error has occurred in connection with a determination, or that additional wages of the claimant or other facts pertinent to such determination have become available or have been newly discovered, or that benefits have been allowed or denied or the amount of benefits fixed on the basis of nondisclosure or misrepresentation of fact.

I.C. § 72-1368(4). Where the Department specifically has the ability to redetermine eligibility, despite a determination having become final for lack of an appeal, it is clear the Department is not bound by the fourteen-day appeal provision.

Henderson's contention regarding the application of the one-year limitation period in I.C. § 72-1368(4) does, however, have merit. Henderson contends that the Department had one year from the date of its initial benefit determinations in December 2004 and December 2005 in which to redetermine her eligibility. While the Department did not label its determinations issued on March 30, 2007, as "redeterminations," it appears that this is what, in effect, they were. I.C. § 72-1368, while providing a procedure for considering and processing a claimant's application for benefits, including procedures for determination and redetermination of the application, does not provide a jurisdictional basis for administrative redeterminations that do not meet the requirements

---

[4] Conversely, if the examiner concludes that the claimant is ineligible, the determination must "include the reasons for the ineligibility." I.C. § 72-1368(3).

specified therein. I.C. § 72-1368(4) specifically states that a "special redetermination must be made within one (1) year from the date of the original determination," except where nondisclosure or misrepresentation is involved. Here, the Department has concluded that there was no nondisclosure or misrepresentation. Thus, the Department had no jurisdiction to make a redetermination under I.C. § 72-1368 more than one year after the original determination.

However, the original determination for the respective claim years is not December 2004 and December 2005 as contended by Henderson. Eligibility for benefits under Idaho Code § 72-1366(4) is determined on a weekly basis. Because a claimant "may be eligible one week and ineligible the following week," his or her continuing eligibility must be reevaluated on a weekly basis. *Talley*, 63 Idaho at 649, 124 P.2d at 785. The Department issued its eligibility determinations on March 30, 2007. Henderson applied for and received benefits for each week in 2006 through the week ending April 1, 2006. Presuming the determination for that final week was made at the beginning of the week, rather than at the end, the Department was just a few days short of the statutory deadline for making a redetermination that might have been effective for the final week. All previous weeks, however, were clearly beyond the one year limitation.

While it appears that the Department lost jurisdiction under I.C. § 72-1368 to redetermine Henderson's entitlement to benefits, that does not necessarily mean that the Department has no recourse under other provisions of the Employment Security Law to seek recovery of benefits to which Henderson might not have been entitled. I.C. § 72-1369 provides the Department with several remedies to recover benefits to which a person was not entitled. Subsection (2) provides for the director of the Department to assess civil penalties in certain instances, subsection (3) allows for collection of overpayments by creation and enforcement of liens or by pursuit of civil action, and subsection 4(a) grants the director of the Department authority to deduct a past overpayment from any future benefits of the claimant. *See Norton v. Dep't of Employment*, 94 Idaho 924, 928, 500 P.2d 825, 829 (1972) (where this Court approved the Department's action in withholding benefits to a claimant on a current unemployment claim until a past overpayment was satisfied, even though collection proceedings with regard to the past overpayment were precluded by the then-applicable three-year statute of limitations).

In reviewing the provisions of section 72-1369 to determine whether that statute provides a basis for the Department's present action, some troubling questions appear. A civil action under subsection (3) is to be commenced within five years "from the date of the final determination

9

establishing liability to repay." One might ask how this limitations period relates to the one and two year limitations for redeterminations in section 72-1368. Are the limitations periods in section 72-1368 true statutes of limitation or are they merely designed to limit the time in which an administrative determination can be reconsidered by the Department? Further, is section 72-1369 a stand-alone provision allowing various methods of recovery apart from the administrative procedure in section 72-1368 or does section 72-1369 merely provide a means for recovery of overpayments determined in accordance with section 72-1368? Also, what is meant by a "determination establishing liability to repay?" The Employment Security Law does not set out any procedure for making such a determination and, if the statute is meant to authorize the same, is there any period of limitation that applies to the making of such a determination? This Court need not address any of those or other questions involving the interplay between section 72-1368 and section 72-1369 because this case does not involve a lien, a civil action, or deduction of an overpayment from a future benefit. Although section 72-1369 does hint that the director may have the ability to pursue an administrative proceeding to recover an overpayment, we need not determine that issue because it is clear the statute does not provide the jurisdictional requisite, i.e. the prescribed administrative procedure. The Legislature appears to make a practice of providing the administrative procedure to be employed in making the various determinations provided for in the Employment Security Law. *See, e.g.,* I.C. §§ 72-1353(1), 72-1357(3), 72-1359, 72-1361, 72-1368, & 72-1372(3). Thus, because I.C. § 72-1369 provides no administrative procedure, that statute cannot be used as a basis to support the Department's action here.

Because we determine that the Department was without jurisdiction to pursue this proceeding, we need not address the issues pertaining to the interpretation and application of the Department's regulations. The Industrial Commission's order is hereby reversed.

### C.

Henderson argues that she is entitled to an award of attorney fees and costs on appeal pursuant to I.C. § 12-117(1). She maintains that her appeal was "made necessary as a result of groundless and arbitrary agency action" that did not have a reasonable basis in fact or law. According to Henderson, the decisions rendered by the Department and the Commission were based on "different and varying grounds and interpretations of a clear law and a clearly written Claimant Handbook that at no time reflect[ed] that a 'job attached' worker can not live in an area different from where she lived while working for the 'attached employer.'" The Department

10

argues that Henderson is not entitled to fees under section 12-117 because its determinations were supported by the facts and law.

I.C. § 12-117 provides:

in any administrative or civil judicial proceeding involving as adverse parties a state agency . . . and a person, the court shall award the prevailing party reasonable attorney's fees, witness fees and reasonable expenses, if the court finds that the party against whom the judgment is rendered acted without a reasonable basis in fact or law.

Henderson is not entitled to fees under this statute. Although Henderson is the prevailing party, she is not entitled to fees because she has failed to show that the Department acted without a reasonable basis in fact or law. This Court has not previously had occasion to rule on the jurisdictional issues presented by I.C. § 72-1368. Therefore, section 12-117 does not justify an award of fees.

### III.

The Industrial Commission's decision is reversed. No attorney fees on appeal.

Justices BURDICK, W. JONES, and HORTON CONCUR.

Chief Justice EISMANN, concurring in the result.

I concur in the result. When a worker applies for unemployment benefits, the Department makes an initial determination as to the worker's eligibility. As provided in Idaho Code § 72-1368(3) (emphasis added):

A representative of the department hereinafter referred to as a claims examiner shall examine a claim filed pursuant to subsection (1) of this section and, on the basis of the facts found by him, *shall determine whether the claimant is eligible for benefits* and, if eligible, the date his benefit year begins, the weekly benefit amount, the total benefit amount, the base period wages, and the base period covered employers. In the event of a denial of benefits, the determination shall include the reasons for the ineligibility.

That initial determination becomes final in fourteen days, unless within that fourteen-day period an appeal is filed. *Id*.

That initial determination is not a determination of the right to continue to receive weekly unemployment benefits. "During the benefit year, employees may be eligible one week and

11

ineligible the following week." *Talley v. Unemployment Comp. Div. of the Indus. Accident Bd.*, 63 Idaho 644, 649, 124 P.2d 784, 785 (1942)  After the initial determination is made, the employee must send in weekly reports showing that he or she is still eligible to receive benefits. Therefore, "[t]he Unemployment Compensation Law requires the eligibility of an applicant for unemployment compensation to be determined weekly before such applicant is entitled to receive benefits . . . .  A compensable week can never be determined at the time the first claim for compensation benefits is filed and the Initial Determination made." *Id*. at 650, 124 P.2d at 786.

Idaho Code § 72-1368(4) permits the director of the Department to make a redetermination of a prior determination, whether it was the initial determination or a subsequent weekly determination.  The time period within which that redetermination must occur is not affected by whether or not the prior determination was made after a contested hearing.  There is nothing in the statute indicating that it only limits the time period for redetermining a prior determination that occurred as a result of an adversarial proceeding.  The statutory time limits apply to all prior determinations regarding eligibility for benefits or the amount of benefits, whether the initial determination or subsequent weekly determinations.  The statute provides insofar as is relevant:

> The director may make a special redetermination whenever he finds that a departmental error has occurred in connection with a determination, or that additional wages of the claimant or other facts pertinent to such determination have become available or have been newly discovered, or that benefits have been allowed or denied or the amount of benefits fixed on the basis of nondisclosure or misrepresentation of fact. The special redetermination must be made within one (1) year from the date of the original determination, except that a special redetermination involving a finding that benefits have been allowed or denied or the amount of benefits fixed on the basis of nondisclosures or misrepresentations of fact may be made within two (2) years from the date of the original determination.

The redetermination must be made within one year of the date of the prior determination, or within two years if benefits were allowed or denied, or their amount was fixed, on the basis of nondisclosures or misrepresentations of fact.  In this case, there were no nondisclosures or misrepresentations of fact, so the one-year period applied.  Because the Department's redeterminations of the prior weekly determinations were not made within the applicable one-year periods, it had no power to make them.

Idaho Code § 72-1369[5] does not provide the Department with statutory authority to make the redeterminations in this case. The overpayment of benefits can only occur if, as a result of a

[5] The statute provides as follows:

**72-1369. Overpayments, civil penalties and interest -- Collection and waiver.**

(1) Any person who received benefits to which he was not entitled under the provisions of this chapter or under an unemployment insurance law of any state or of the federal government shall be liable to repay the benefits and the benefits shall, for the purpose of this chapter, be considered to be overpayments.

(2) Civil penalties. The director shall assess the following monetary penalties for each determination in which the claimant is found to have made a false statement, misrepresentation, or failed to report a material fact to the department:
(a) Twenty-five percent (25%) of any resulting overpayment for the first determination;
(b) Fifty percent (50%) of any resulting overpayment for the second determination; and
(c) One hundred percent (100%) of any resulting overpayment for the third and any subsequent determination.

(3) Any overpayment, civil penalty and/or interest which has not been repaid may, in addition to or alternatively to any other method of collection prescribed in this chapter, including the creation of a lien as provided by section 72-1360, Idaho Code, be collected with interest thereon at the rate prescribed in section 72-1360(2), Idaho Code. The director may also file a civil action in the name of the state of Idaho. In bringing such civil actions for the collection of overpayments, penalties and interest, the director shall have all the rights and remedies provided by the laws of this state, and any person adjudged liable in such civil action for any overpayments shall pay the costs of such action. A civil action filed pursuant to this subsection (3) shall be commenced within five (5) years from the date of the final determination establishing liability to repay. Any judgment obtained pursuant to this section shall, upon compliance with the requirements of chapter 19, title 45, Idaho Code, become a lien of the same type, duration and priority as if it were created pursuant to section 72-1360, Idaho Code.

(4) Collection of overpayments.
(a) Overpayments, other than those resulting from a false statement, misrepresentation, or failure to report a material fact by the claimant, which have not been repaid or collected, may, at the discretion of the director, be deducted from any future benefits payable to the claimant under the provisions of this chapter. Such overpayments not recovered within five (5) years from the date of the final determination establishing liability to repay may be deemed uncollectible.
(b) Overpayments resulting from a false statement, misrepresentation, or failure to report a material fact by the claimant which have not been recovered within eight (8) years from the date of the final determination establishing liability to repay may be deemed uncollectible.

(5) The director may waive the requirement to repay an overpayment, other than one resulting from a false statement, misrepresentation, or failure to report a material fact by the claimant, and interest thereon, if:
(a) The benefit payments were made solely as a result of department error or inadvertence and made to a claimant who could not reasonably have been expected to recognize the error; or
(b) Such payments were made solely as a result of an employer misreporting wages earned in a claimant's base period and made to a claimant who could not reasonably have been expected to recognize an error in the wages reported. The director, in his sole discretion, may also compromise a civil penalty assessed under subsection (2) of this section and/or interest.

redetermination, the Department has concluded that an employee received more in benefits than he or she was entitled to receive. Idaho Code § 72-1368 sets forth the time limits within which that redetermination must occur. Once the redetermination has been made, Idaho Code § 72-1369 sets forth the manner of collecting the overpayment and the time limits within which the collection proceedings must occur. The collection of an overpayment as provided in Section 72-1369 can only occur if there has been a prior redetermination of the overpayment as provided in Section 72-1368. Because there had been no timely redetermination in this case, there was no overpayment to collect under the procedures set forth in Section 72-1369.

---

(6) Neither the director nor any of his agents or employees shall be liable for benefits paid to persons not entitled to the same under the provisions of this chapter if it appears that such payments have been made in good faith and that ordinary care and diligence have been used in the determination of the validity of the claim or claims under which such benefits have been paid.