## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 41208

JOSEPH E. TALBOT,                                   )
                                                    )
    Claimant-Appellant,                      )
                                                    )      **Boise, February 2014 Term**
v.                                                  )
                                                    )      **2014 Opinion No. 61**
DESERT VIEW CARE CENTER, Employer,  )
ID BUREAU EDUCATIONAL SERVICE,      )      **Filed:  June 20, 2014**
Cost Reimbursement Employer, and IDAHO )
DEPARTMENT OF LABOR,                )      **Stephen W. Kenyon, Clerk**
                                                    )
    Defendants-Respondents.                  )
                                                    )

Appeal from the Industrial Commission.

Industrial Commission decision denying unemployment benefits, <u>affirmed.</u>

Joseph E. Talbot, argued pro se.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise.  Did not appear.

---

BURDICK, Chief Justice

Joseph Talbot worked at Desert View Care Center ("Desert View") as a nurse and was discharged due to a Facebook post that Desert View found violated its Social and Electronic Media Conduct Policy ("Social Media Policy"). Talbot applied for unemployment benefits, and an Idaho Department of Labor Appeals Examiner awarded him benefits. The Idaho Industrial Commission reversed, concluding that Talbot engaged in employment-related misconduct. Talbot appeals, arguing that Desert View never communicated its Social Media Policy to him. We affirm the Industrial Commission's decision.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Desert View employed Talbot as a full-time licensed practical nurse from July 5, 2012, until February 2, 2013. After a shift in January 2013, Talbot posted the following on Facebook:

> Ever have one of those days where you'd like to slap the ever loving bat snot out of a patient who is just being a jerk because they can? Nurses shouldn't have to take abuse from you just because you are sick. In fact, it makes me less motivated

1

to make sure your call light gets answered every time when I know that the minute I step into the room I'll be greeted by a deluge of insults.

A nursing professor who was one of Talbot's Facebook friends saw the post and e-mailed Desert View the next day to express her concerns about resident safety. Talbot said he was just frustrated and venting.

Desert View had a Social Media Policy. A portion of that policy stated that employees are "to treat physicians, providers, vendors, conservators, regulators, competitors, fellow employees, managers, and the family members of our patients with respect electronically, as well as in-person." Additionally, "employees will at all times avoid slanderous, vulgar, obscene, intimidating, threatening or other 'bullying' behavior electronically towards any of the groups identified above or towards other facility stakeholders." Although Talbot states that he never read the Social Media Policy, he acknowledged receiving this policy and agreeing to its requirements when he signed for his paycheck on September 10, 2012. Desert View discharged Talbot on February 2, 2013, for violating the Social Media policy with his Facebook post.

Talbot submitted a claim for unemployment benefits. The Idaho Department of Labor ("IDOL") initially denied him eligibility for those benefits because Desert View discharged Talbot for violation of its Social Media Policy. Talbot appealed, and an IDOL Appeals Examiner heard the case by telephone. Talbot contends that during that hearing he mentioned that Desert View held a staff meeting where a policy was discussed, but he thought that policy was only about cell phone use and did not mention Facebook. The IDOL found Talbot "would never harm a patient. He was venting." It also found that the policy was "vague in regards to Face Book." The IDOL concluded that Desert View did not discharge Talbot for employment-related misconduct, reversed the eligibility denial, and allowed Talbot unemployment benefits.

Desert View appealed the IDOL's decision to the Idaho Industrial Commission. The Commission conducted a *de novo* review of the record, relied on an audio recording of the IDOL hearing, and reviewed exhibits admitted during the IDOL hearing. The Commission then adopted the IDOL Appeals Examiner's findings of fact. The Commission found that under the standards of behavior test Desert View had communicated its Social Media Policy to Talbot and Talbot's conduct violated that policy's standard. Thus, the Commission concluded that Desert View had discharged Talbot for employment-related misconduct. The Commission then reversed IDOL's decision and denied Talbot's unemployment benefits.

2

Talbot filed a motion to reconsider, arguing that Desert View had not shown that it effectively communicated its Social Media Policy to him because the staff meeting where Desert View discussed the policy only specifically noted cell phone use. The Commission stated that the policy was discussed at a staff meeting and that Talbot acknowledged the policy with his signature. The Commission also noted that Desert View's policy clearly stated that it was not limited to any one social media outlet. Thus, the Commission denied the motion to reconsider. Talbot timely appealed.

## II. STANDARD OF REVIEW

This Court exercises free review over questions of law when we review Industrial Commission decisions. *Adams v. Aspen Water, Inc.*, 150 Idaho 408, 412, 247 P.3d 635, 639 (2011). We only disturb the Commission's findings of fact if those findings are clearly erroneous, which means they are not supported by substantial and competent evidence. *Henderson v. Eclipse Traffic Control & Flagging, Inc.*, 147 Idaho 628, 631, 213 P.3d 718, 721 (2009). Evidence is substantial and competent when it is "relevant evidence that a reasonable mind might accept to support a conclusion." *Adams*, 150 Idaho at 412, 247 P.3d at 639 (quoting *Henderson*, 147 Idaho at 631, 213 P.3d at 721). We will not re-weigh the evidence or determine whether we would have drawn different conclusions from the evidence. *Rigoli v. Wal-Mart Assocs., Inc.*, 151 Idaho 707, 710, 263 P.3d 761, 764 (2011).

We note that Talbot did not include a recording or transcript of the IDOL hearing as part of the record on appeal. An appellant has the burden to provide a sufficient record to substantiate his claims on appeal. *Goodman Oil Co. v. Scotty's Duro-Bilt Generator, Inc.*, 147 Idaho 56, 59, 205 P.3d 1192, 1195 (2009). When the appellant provides a record that is inadequate to review his claims, we will not presume error below. *W. Cmty. Ins. Co. v. Kickers, Inc.*, 137 Idaho 305, 306, 48 P.3d 634, 635 (2002). Here, Talbot did not provide any record of the IDOL hearing, and we do not presume error in the Commission's findings of fact.

## III. ANALYSIS

### A. Because Talbot provided an insufficient record, we affirm the Commission.

A person is not entitled to unemployment benefits when "he was discharged for misconduct in connection with his employment." I.C. § 72-1366(5). The burden is on the employer to prove by a preponderance of the evidence that the discharge was for employment-related misconduct. *Adams*, 150 Idaho at 413, 247 P.3d at 640. Employment-related misconduct

3

is (1) a willful, intentional disregard of the employer's interest; (2) a deliberate violation of the employer's reasonable rules; or (3) a disregard of a standard of behavior which the employer has a right to expect of his employees. *Id.*; IDAPA 09.01.30.275.02. The Commission considers all three grounds to determine whether an employee's discharge was due to employment-related misconduct. *Dietz v. Minidoka Cnty. Highway Dist.*, 127 Idaho 246, 248, 899 P.2d 956, 958 (1995).

The Commission concluded that Talbot committed employment-related misconduct under the standards of behavior test. The Commission held that under that test, Desert View had communicated its Social Media Policy to Talbot and Talbot's conduct violated the policy's standard. Talbot argues Desert View did not meet the standards of behavior test because it never communicated the Social Media Policy to him. Because the Commission based its decision on the standards of behavior test, only that test is at issue.

Whether a claimant disregarded the employer's standards of behavior is a factual question for the Commission. *Lang v. Ustick Dental Office, P.A.*, 120 Idaho 545, 548, 817 P.2d 1069, 1072 (1991). The test requires that the employer prove that (1) the employee's conduct fell below the employer's expected standard of behavior; and (2) the employer's expectations were objectively reasonable under the circumstances. *Adams*, 150 Idaho at 413, 247 P.3d at 640; IDAPA 09.01.30.275.02(c). The test's first prong addresses what the employer subjectively expected. *Adams*, 150 Idaho at 413, 247 P.3d at 640. The second prong considers whether the employer's expectations were reasonable under the circumstances. *Id.* An expectation is reasonable under the circumstances when it is communicated to the employee, unless that expectation flows naturally from the employment relationship. *Id.* This communication standard "is higher and more specific than what would be necessary simply to discharge an employee for cause." *Harris v. Elec. Wholesale*, 141 Idaho 1, 4, 105 P.3d 267, 270 (2004).

Here, the first prong is met because Desert View had an expectation that its nurses would not make threatening statements about a patient on Facebook, which is supported by its Social Media Policy. That policy specifically prohibits "slanderous, vulgar, obscene, intimidating, threatening or other 'bullying' behavior electronically" towards facility stakeholders. Talbot insists that his post was not threatening because it was a rhetorical statement meant to initiate discussion. Talbot's view of the post is plausible. However, it appears that Desert View found Talbot's post to be a threat, and thus it fell below the subjective expectations Desert View

4

established in its policy. Talbot provided no transcript or recording of his hearing to this Court. As a result, Talbot did not meet his burden to provide a record sufficient to support his claims. We cannot assume error below without a proper record on appeal. *City of Coeur d'Alene v. Simpson*, 142 Idaho 839, 844, 136 P.3d 310, 315 (2006). Therefore, we find that Desert View met the standards of behavior test's first prong.

As to the second prong, the Commission concluded Talbot's signed acknowledgement that he had received and agreed to the Social Media Policy was evidence Desert View communicated its policy to Talbot. Talbot argues that Desert View did not communicate its Social Media Policy to him and did not prove this by a preponderance of the evidence. Talbot states his acknowledgement was a mistake. Talbot contends that the staff meeting he acknowledged in the IDOL hearing was only about the use of cell phones on company property. Again, this factual dispute cannot be addressed because the record is inadequate to rebut the Commission's findings and we do not presume error below. Talbot did not provide the IDOL hearing's transcript or audio recording, so we are bound to the IDOL and Industrial Commission's findings of fact and do not presume error in those facts.

Although Talbot stated that the staff meeting only mentioned cell phone use and that he did not know he was agreeing to the Social Media Policy when he signed for his paycheck, the Commission still determined that he acknowledged the policy with his signature. That signature attested that Talbot had "received the updated Social and Electronic Media policy and agree[d] to the requirements of that policy." Again, Talbot's knowledge of the policy is a factual issue decided by the Commission. No recording or transcript of the hearing is before this Court. While the IDOL concluded the Social Media Policy was "vague in regard to Face Book," the Commission noted in its Order Denying Reconsideration that Desert View's policy was discussed at a staff meeting and that the policy's text clearly mentions Facebook. The Commission already weighed the evidence and found that Desert View communicated the policy to Talbot. Without a proper record on appeal, we must assume substantial competent evidence supports the decision. *Fritts v. Liddle & Moeller Const., Inc.*, 144 Idaho 171, 174, 158 P.3d 947, 950 (2007). As we have no other evidence, the Commission's decision is correct.

Talbot additionally argues his conduct was not willful, he had no bad intent, and he did not mean to harm anyone. He cites to the IDOL decision to support this argument. However, under the standards of behavior test "there is no requirement that the claimant's conduct be

5

willful, intentional, or deliberate. The claimant's subjective state of mind is irrelevant." IDAPA 09.01.30.275.02(c).

The fact that Talbot had never done this before also does not change the analysis. This Court has held that "[a] single incident of comparatively nonserious disrespect by complaining and arguing is not misconduct." *Avery v. B & B Rental Toilets*, 97 Idaho 611, 615, 549 P.2d 270, 274 (1976). However, here the Commission could have found Talbot's conduct went beyond a simple complaint that showed non-serious disrespect. The Commission found Talbot violated the policy against electronically intimidating, threatening, or bullying behavior towards a facility stakeholder. Talbot posted a statement for many to see that indicated he would not respond to patient's call button in certain cases. This could be interpreted as putting his intent toward patient care in question. The professor who read this post questioned its content enough that she felt compelled to e-mail the facility, which is evidence to support the Commission's finding. We affirm the Industrial Commission's decision that Desert View discharged Talbot for employment-related misconduct.

## IV. CONCLUSION

We affirm the Commission's decision. Costs to the Commission.

Justices EISMANN and HORTON, **CONCUR.**

J. JONES, Justice, dissenting.

I dissent from the Court's opinion based upon the peculiar wording in Desert View's Social Media Policy (Policy). The Commission determined that Talbot was discharged for misconduct for having violated the Policy. The language of the Policy is simply ineffective to make Talbot's conduct violative of its specific terms.

The portion of the Policy that Talbot was alleged to have violated, Section 3.2.2.2.b, reads:

> **General Conduct**: [Desert View] also expects employees to treat physicians, providers, vendors, conservators, regulators, competitors, fellow employees, managers, and the family members of our patients with respect electronically, as well as in-person. As with the conduct expected of employees at their worksite, employees will at all times avoid slanderous, vulgar, obscene, intimidating, threatening or other "bullying" behavior electronically towards any of the groups identified above or towards other facility stakeholders.

The IDOL appeals examiner, based on the hearing where the missing audio recording was made, determined that the "employer's policy regarding media is vague in regards to Face Book," and

that the employer had "not shown by a preponderance of the evidence that the claimant was discharged for misconduct in connection with employment." Since the Commission heard the matter *de novo*, those conclusions were not binding on the Commission, nor are they on the Court. Apparently, when the Commission listened to the same audio recording, it determined that the Policy did apply to Facebook. This is not an unreasonable conclusion. After all, Facebook is obviously a part of social media. In this regard, the Commission is correct.

The Commission mistakenly references the provisions of Section 3.2.2.2.b to support its conclusion that Talbot was properly discharged for misconduct. According to the Commission, Desert View "discharged [Talbot] . . . for posting a derogatory and threatening statement <u>about a patient</u> on Facebook in violation of [Desert View's] social media policy." (emphasis added) Further, the Commission stated that Desert View "had a reasonable expectation that [Talbot] would not make a derogatory and/or threatening statement <u>about a patient</u> on Facebook" because Desert View's "policy specifically prohibits any 'slanderous, vulgar, obscene, intimidating, threatening or other bullying behavior electronically' towards facility stakeholders, including patients." (emphasis added) Those findings make it clear that Talbot was discharged for an alleged violation of Section 3.2.2.2.b. A careful reading of the section discloses that it does not apply to Desert View patients.

The first sentence of Section 3.2.2.2.b specifies a number of groups that must be respected electronically and in person. The laundry list does not include patients. The only mention of patients is "the family members of our patients." The second sentence cannot be properly read to include patients, either. That sentence requires employees to avoid certain behavior toward "the groups identified above" or "<u>other</u> facility stakeholders." (emphasis add) The use of the term "other stakeholders" indicates that the groups identified in the first sentence are stakeholders. All of the stakeholders are groups and all of the groups of stakeholders are third parties—persons other than patients. It may well be that the defective language of Section 3.2.2.2.b was unintentional but it can't be read to apply to conduct directed toward patients. It may be that the drafter thought that some other policy applied. The record contains no documentary evidence of a social media policy applying specifically to patients. Nevertheless, the Commission based its decision on this defective language. The Commission did not rule upon an alternate ground to support the discharge.

Nothing in the Commission's findings indicates that any source or party defined the term "stakeholder." At the oral argument of this appeal, it was readily apparent that Talbot had no idea what a stakeholder was. When asked if he was familiar with the term "facility stakeholder," Talbot replied, "I don't even know what that means now to be honest with you. I envision somebody holding meat. It's a steakholder. I really have no idea what that means. . . . Somebody having an interest in the company? Somebody holding a stake. I guess I don't know." Of course, this reaction cannot substitute for the missing IDOL audio recording, but it does demonstrate the imprecision of the term "facility stakeholder" to identify a patient, when patients are not made specifically subject to the protections of Section 3.2.2.2.b.

The record simply does not support the ground chosen by the Commission for determining that Talbot was discharged for misconduct. The Commission made no finding that the terms of Section 3.2.2.2.b, which Talbot was charged with violating, had been amended in any fashion. Regardless of what may or may not have been said during the IDOL hearing that was the subject of the missing audio recording, the specific wording of the Policy remains as currently stated in the documentary record. The Commission did not base its decision on any other ground.

"The employer must prove by a preponderance of evidence that the discharge was for misconduct or the claimant will be awarded benefits." *Quinn v. J.R. Simplot Co.*, 131 Idaho 318, 320, 955 P.2d 1097, 1099 (1998). When a discharge is based on an employee's violation of a standard of behavior, "to meet the standard-of-behavior test and prove discharge for misconduct, an employer's expectations are ordinarily reasonable only where they have been communicated to the employee." *Harris v. Electrical Wholesale*, 141 Idaho 1, 4, 105 P.3d 267, 271 (2004). And, "for unemployment insurance purposes, in order for the discharge of an employee to qualify as being for 'misconduct' such as to deny a claimant unemployment benefits, the communication standard is higher and more specific than what would be necessary simply to discharge an employee for cause." *Id.* The record does not disclose that such showings were made and there is simply not substantial and competent evidence in the record to support the Commission's determination based on the specific, unaltered language of Section 3.2.2.2.b. I would reverse.

Justice W. JONES CONCURS.

8